## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Case No. 5:08-cv-1125-C

WELLS FARGO BANK, N.A., as Trustee for the Certificateholders of
Commercial Mortgage Pass-Through Certificates, Series 2006-MF2, and as
Trustee for the Certificateholders of Commercial Mortgage Pass-Through
Certificates, Series 2006-MF3, acting by and through Crown NorthCorp,
Inc. as Special Servicer,
Plaintiff,
v.
LaSALLE BANK NATIONAL ASSOCIATION,
Defendant.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL
PRODUCTION TO DEFENDANT OF DOCUMENTS PLAINTIFF PURPORTEDLY
WITHHELD ON THE BASIS OF PRIVILEGE OR FOR IN CAMERA INSPECTION

|  |  |
|---|---|
| Kiran A. Phansalkar, OBA #11470 | ~ AND ~ |
| Crystal A. Johnson, OBA #21715 | Paul D. Snyder* |
| Of the Firm: | SNYDER LAW FIRM LLC |
| Conner & Winters, LLP | 11551 Granada, Suite 100 |
| 1700 One Leadership Square | Leawood, Kansas 66211 |
| 211 N. Robinson Avenue | Telephone: (913) 685-3900 |
| Oklahoma City, OK 73102 | Facsimile: (913) 685-3902 |
| Telephone: (405) 272-5711 | *Licensed only in Kansas and |
| Facsimile: (405) 232-2695 | Missouri |
|  | (Admitted in this case *pro hac vice*) |

*Attorneys for Plaintiff*

May 24, 2010

# <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS ................................................................................ 2

    I.    From the outset of the privilege log process, Defendant has refused to act in good faith. ................................................................................ 2

    II.    Defendant's complaints regarding Plaintiff's privilege log are hypocritical and/or inconsistent with the parties' agreement. ....................... 3

    III.    Defendant revised its privilege log to include stock language for each description. ................................................................................ 5

    IV.    Defendant failed to complete the meet and confer process in good faith. ................................................................................ 6

    V.    A portion of the Motion is likely moot in light of Plaintiff's revised privilege log. ................................................................................ 7

    VI.    There is no time constraint that necessitated Defendant filing its premature Motion. ................................................................................ 9

ARGUMENT & AUTHORITIES ................................................................ 9

    I.    The Motion is premature. ................................................................ 9

    II.    All documents listed on Plaintiff's revised privilege log are attorney-client privileged or work product, and the revised privilege log provides adequate information to assert these claims. ................................ 11

        A.    Attorney Client Privilege ................................................ 12

            1.    Plaintiff has adequately described each attorney-client privileged document to support the privilege. ..................... 12

            2.    Plaintiff's legal invoices are attorney-client privileged and work product. ................................................ 13

            3.    The attorney-client privilege extends to documents shared between Plaintiff's counsel and certificateholders (Investors), on whose behalf this lawsuit is brought. ................................................ 15

                a.    Facts supporting existence of attorney-client privilege and/or application of the common interest doctrine. ........................................ 15

                b.    Attorney-client privilege applies. ............................... 16

i

c.      The common interest doctrine is also
         applicable. ...............................................................17

B.     Work Product ..................................................................................21

1.      Plaintiff has adequately described each work product
        document sufficiently to support work product
        protection..............................................................................21

2.      LaSalle has failed to demonstrate that it has a
        substantial need for Plaintiff's work product........................23

CONCLUSION .............................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Chandler v. Denton, 741 P.2d 855 (Okla. 1987) .................................................. 12

Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1174
(D.S.C.1974) .................................................................................................... 18

Federal Deposit Insurance Corp. v. Ogden Corp., 202 F.3d 454 (1st Cir.
2000) ................................................................................................................. 19

Greenville Imaging, LLC v. Washington Hospital Corp., 2008 U.S. App.
LEXIS 21885, *7 (5th Cir. 2008) .................................................................. 14

Griffith v. Wal-Mart Stores, 135 F.3d 376 (6th Cir. 1998) .............................. 21

Hodges, Grant & Kaufmann v. United States Gov't., 768 F.2d 719 (5th
Cir.1985) .......................................................................................................... 18

In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120
(3rd Cir. 1986) ................................................................................................. 18

In re Grand Jury Subpoenas, 902 F.2d 244 (4th Cir. 1990) ....................... 18, 20

LaSalle v. CAPCO, 2006 U.S. Dist. LEXIS 27128 (S.D.N.Y. 2006) .............. 14

LaSalle v. Lehman Brothers Holdings, Inc., 209 F.R.D. 112 (D. Md. 2002) . 18, 19, 20, 21

Lindley v. Life Investors Ins. Co. of America, 2010 WL 653022, *5 (N.D.
Okla. 2010) ...................................................................................................... 12

Metro Wastewater Reclamation Dist. v. Continental Cas. Co., 142 F.R.D.
471 (D. Colo. 1992) ......................................................................................... 18

Nelson v. Granite St. Ins. Co., 2009 WL 2252182, *2 (W.D. Okla. July 28,
2009) ..................................................................................................... 13, 15, 22, 23

Paup v. Gear Products, Inc., 327 Fed. Appx. 100 (10th Cir. 2009) .................. 21

Schulte v. Potter, 218 Fed. Appx. 703, 708, n.3 (10th Cir. 2007) ...................... 9

Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335 (10th Cir.
1995) ................................................................................................................. 22

U.S. v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998) ...................................... 12

Willhite v. Collins, 459 F.3d 866 (8th Cir. 2006) ............................................. 14

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) .......................................................................... 22, 23

Fed. R. Civ. P. 26(b)(5)(A) .................................................................................. 11

Fed. R. Civ. P. 37(a)(1) ....................................................................................... 9

## **Treatises**

Paul R. Rice, 1 Attorney-Client Privilege in the United States, § 7:1
    (Thomson West 2d ed. 1999)) ........................................................... 12

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

WELLS FARGO BANK, N.A., as Trustee
for the Certificateholders of Commercial
Mortgage Pass-Through Certificates, Series
2006-MF2, and as Trustee for the
Certificateholders of Commercial Mortgage
Pass-Through Certificates, Series 2006-
MF3, acting by and through Crown
NorthCorp, Inc. as Special Servicer,

                Plaintiff,

v.

LaSALLE BANK NATIONAL
ASSOCIATION,

                Defendant.

Case No. 5:08-cv-1125-C

Honorable Robin J. Cauthron

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL
## PRODUCTION TO DEFENDANT OF DOCUMENTS PLAINTIFF
## PURPORTEDLY WITHHELD ON THE BASIS OF PRIVILEGE
## OR FOR IN CAMERA INSPECTION

Plaintiff Wells Fargo Bank, N.A., as Trustee for the Certificateholders of
Commercial Mortgage Pass-Through Certificates, Series 2006-MF2, and as Trustee for
the Certificateholders of Commercial Mortgage Pass-Through Certificates, Series 2006-
MF3, acting by and through Crown NorthCorp, Inc. as Special Servicer (collectively
"Plaintiff") requests that this Court deny "Defendant's Motion to Compel Production to
Defendant of Documents Plaintiff Purportedly Withheld on the Basis of Privilege or for
*In Camera* Inspection" (the "Motion").

For unknown reasons, Defendant filed the Motion on May 17, 2010, despite
Plaintiff's assurance just three days before that it would be producing a revised privilege
log within a week. The revised log was provided as promised on May 21 and, as a result,
many of the issues raised by the Motion are likely moot. Therefore, as a preliminary
matter, the Motion should be denied on the basis that it is premature and because

1

Defendant refused to engage in good faith in the meet and confer process.  Furthermore, the Motion should be denied because all documents listed on Plaintiff's revised log are subject to attorney-client privilege and/or work product protection, and the log provides more than sufficient information to properly assert these claims.

## STATEMENT OF FACTS

**I.      From the outset of the privilege log process, Defendant has refused to act in good faith.**

1.      The parties have been producing documents in this case, and the corresponding Nevada action,[1] since June 2009.  Almost 6 months later, on December 14, 2009, Defendant wrote to Plaintiff and demanded that the parties exchange privilege logs by December 31, 2009.  (Exhibit 3 to Defendant's Motion).  Plaintiff was unable to meet this arbitrary deadline, but did attempt to negotiate with Defendant concerning a deadline for exchange and format for the privilege logs.

2.      On January 26, 2010,[2] Plaintiff e-mailed Defendant to suggest that the parties reach an agreement regarding the specific contents of their logs: "We would like to establish an agreement before we get too much further on our privilege logs, as that could avoid disputes after-the-fact and the potential for significant additional work as a result for one or both parties."  (Exhibit 6).  As detailed in the following factual summary, these words were prescient.  (See Facts 8 and 9).

3.      Having received no response to Plaintiff's January 26 e-mail, Plaintiff inquired again of Defendant on February 8 regarding the contents of the logs.  Defendant finally responded on February 9, accusing Plaintiff of delay (after waiting 2 weeks to respond to Plaintiff's January 26 e-mail), and stating that Defendant's log would contain:

---

[1] Nevada District Court Case No. 2:08-cv-1448.

[2] Except as specifically noted otherwise, all dates discussed herein are the year 2010.

"(i) date of document; (i)[sic]recipient(s) and sender(s), i.e., To/From/cc; (iii) a short description of the document; and (iv) the basis for privilege." (Exhibit 6).

4.      Plaintiff agreed to follow Defendant's proposed format, and relied upon this agreement in preparing its privilege log, produced on March 5. (Exhibit 3).

## II. Defendant's complaints regarding Plaintiff's privilege log are hypocritical and/or inconsistent with the parties' agreement.

5.      On April 6, Defendant issued a letter to Plaintiff detailing alleged deficiencies in Plaintiff's log. (Exhibit 6 to Defendant's Motion).

6.      One of Defendant's principle complaints is that Plaintiff's log descriptions were inadequate to assert attorney-client privilege or the work product doctrine. Plaintiff responded by noting that many of Defendant's descriptions were virtually identical in terms of level of detail provided. (Exhibit 10 to Defendant's Motion, pp. 2-3). By way of example, the following chart compares four entries from the parties' original privilege logs, underscoring the fact that Plaintiff's log provide the same, if not greater level of detail than Defendant's log in describing privileged documents:[3]

| Log # | Date | Priv. Type | Type | Subject | From | Recipient |
|---|---|---|---|---|---|---|
| **Plaintiff 384** | 10/21/2008 | Attorney-Client | Email string | Heritage Ridge and Royal Oak and the foreclosure proceedings related to both | Carla Horton | Steve Brown, Jackie Trojanowsky and Kevin Blaney |
| **Defendant 72** | 9/6/2006 | Attorney-Client | | E-mail from counsel regarding Flessner loans. | Brian Fetterolf | Charles Krawitz |

[3] For purposes of comparison, the fields of the Defendant's log entries have been re-arranged, and the "attachment" and "cc" columns have been deleted. The substantive words in each description are emphasized by underlining. Defendant has since added additional boilerplate language to each entry, as discussed in Facts 10 and 11.

| Log # | Date | Priv. Type | Type | Subject | From | Recipient |
|---|---|---|---|---|---|---|
| **Plaintiff 157** | 5/2/2008 | Attorney-Client | Email | Flessner/Royal Oaks/Heritage | Jackie Trojanowsky | Kevin Blaney and Steve Brown |
| **Defendant 75** | 10/19/2006 | Attorney-Client | | E-mail from counsel regarding Flessner. | Brian Fetterolf | Charles Krawitz |

| Log # | Date | Priv. Type | Type | Subject | From | Recipient |
|---|---|---|---|---|---|---|
| **Plaintiff 50** | 3/27/2009 | Attorney-Client | E-Mail and Attm. | Heritage Ridge and Hillandale breach notices | Paul Snyder | Jackie Trojanowsky |
| **Defendant 102** | 10/30/2008 | Work Product & Attorney-Client | | E-mail from counsel regarding claims against LaSalle. | Stephanie Union, Esq. | Mary Fedele |

| Log # | Date | Priv. Type | Type | Subject | From | Recipient |
|---|---|---|---|---|---|---|
| **Plaintiff 71** | 3/7/2008 | Attorney-Client | E-Mail and Attm. | Heritage Ridge and Royal Oak Apartments | Kevin Blaney | John James |
| **Defendant 106** | 11/5/2008 | Work Product & Attorney-Client | | E-mail to counsel regarding MFG. | Steve Wasser | Paul Kurzeja |

7.     Defendant has also failed to provide any greater level of description for its own claimed work product documents in its privilege log.  For example, Defendant argues that Plaintiff's Log Nos. 2–4, which are May 18, 2009[4] e-mails between clients Jackie Trojanowsky and John James described as "Litigation strategy re Flessner loans", are inadequately described to claim work product protection.  However, Defendant's original privilege log contains numerous work product entries, dated in 2007 and 2008, described as "E-mail [to/from] counsel regarding" "MF2 litigation" (Exhibit 5, Log Nos. 90, 91) or "claims against LaSalle" (Exhibit 5, Log Nos. 93, 94).  These descriptions provide no more detail to support claims of work product protection than the entries on Plaintiff's log.

---

[4] This post-dates the October 22, 2008 filing on the Complaint in this action, and the April 23, 2009 First Amended Complaint.

8.     Defendant also alleged Plaintiff's privilege log was deficient because the log did not provide a separate column explaining whether attachments to privileged documents[5] were also privileged.  (Exhibit 6 to Defendant's Motion, p. 3).  This was not part of the original agreement, but Plaintiff ultimately agreed in the interest of compromise to revise its privilege log to include an additional column regarding attachments.  (Exhibit 12 to Defendant's Motion, p. 2).

9.     Not long after Plaintiff had revised its log to include an attachment column, Plaintiff received another letter on May 8 from Defendant demanding **for the very first time** that Plaintiff revise its privilege log to separately identify each individual e-mail within an e-mail string.  (Exhibit 13 to Defendant's Motion, p. 2).  Like the attachment column, the parties never discussed or agreed to such a protocol for e-mail strings.[6]

## III.   Defendant revised its privilege log to include stock language for each description.

10.     After Plaintiff pointed out Defendant's hypocrisy in complaining about "deficiencies" in the descriptions of attorney-client privilege and work product entries, Defendant revised nearly <u>every</u> attorney-client entry in its log to simply add the words "for purposes of [providing/obtaining] legal advice."  (Exhibit 4).

11.     Defendant similarly revised every work product entry to add the words: "in anticipation of litigation."  (Exhibit 4).

---

[5] The term "privileged documents" will be used collectively in this brief to refer to both attorney-client privileged documents and work product, though work product protection is not technically a privilege.

[6] Interestingly, Defendant does not raise the alleged "e-mail string deficiency" in the Motion, clearly demonstrating that even Defendant understands the inequity of asserting deficiencies based on a privilege log protocol that was never suggested or agreed to.

**IV.    Defendant failed to complete the meet and confer process in good faith.**

12.    Since Defendant's April 6 letter, Plaintiff has earnestly worked to negotiate revisions to both parties' logs and resolve all issues relating to the logs without the Court's involvement.  These negotiations and revisions, including multiple letters and e-mails[7] and an April 22 teleconference, continued up to and including the day Defendant filed the Motion.

13.    On Friday, May 14, Plaintiff advised Defendant, as a courtesy, that in response to the most recent letter from Defendant's counsel it intended to issue a detailed letter in response, including a revised privilege log within the next week:

> We have reviewed your May 8 letter concerning Plaintiff's privilege logs, and we are in the process of making some revisions to the logs.  We plan to respond to your letter, with our revised privilege logs, next week.  Thank you.

Defendant responded:

> Unless you tell us now what you are planning to revise, we will rely on the written correspondence and the meet and confer to understand plaintiff's position, which plaintiff stated fairly emphatically.  We are not going to delay further in engaging in motion practice based on the type of vague statement below.

Plaintiff replied:

> Your May 8 letter did not propose a deadline for us to respond to your letter or revise our logs.  Suddenly, that deadline is "now" after our e-mail this morning advising we will provide you with a formal response to your letter, and revised privilege logs, next week.  We are still in the process of reviewing our privilege logs, and we are not prepared at this time to discuss the changes which will be made until after we have completed our review.  We cannot stop you from filing a motion with the court, but we believe it would be premature given that you have not received our response to your letter, or reviewed our revised logs.  We wish to continue working in good faith to resolve this privilege log dispute without the court's involvement.

---

[7] See Exhibits 7 – 14 to Defendant's Motion.

(Exhibit 7).

14.     Unfortunately, Defendant made good on its threat, filing the Motion the following Monday, May 17 before receiving Plaintiff's promised letter or revised privilege log.  Nevertheless, on May 17, just a few hours after Defendant filed the Motion,[8] Plaintiff sent its promised response to Defendant's May 8 letter.  (Exhibit 8). This letter makes clear Plaintiff's intention to continue working in good faith to resolve the parties' privilege log dispute, and leaves open the possibility of reaching a compromise on all of Defendant's remaining issues.  To date, Defendant has failed to respond to this letter.  Also as promised, Plaintiff provided its revised privilege log to Defendant on May 21.  (Exhibit 2).[9]

## V.    A portion of the Motion is likely moot in light of Plaintiff's revised privilege log.

15.     In accordance with the parties' meet and confer process, Plaintiff reviewed the attorney-client privileged entries on its original privilege log (Exhibit 3) and determined that Log Nos. 68, 147, 149, 150, 164, 178–180, 288, 289, 292, 301, 303, 309, 340, 343, 353, 354, 359, 363, 364, 366, 457–462, 514, and 516 could either be described in more detail, were not privileged, or not responsive.  Plaintiff revised its log accordingly, and the Motion is now likely moot concerning these particular entries.

16.     For the majority of entries, however, no revisions were required.  Nearly every[10] communication listed as attorney-client privileged involved outside counsel

---

[8] The majority of this letter was actually drafted the morning on May 17, before Defendant filed the Motion.  (Mirakian Aff. ¶ 8).

[9] In the process of drafting this Response, Plaintiff discovered that an additional 7 documents listed on its privilege log were not privileged.  Plaintiff has revised its privilege log to delete Log Nos. 352, 355, 650–653, and 659.  This newly revised log is attached as Exhibit 2 in lieu of the May 21 version, and was separately provided to Defendant earlier today.

[10] The only exceptions are Log Nos. 627–634, 637–649, 692, and 693, which involved 2006

7

specifically retained by Plaintiff for purposes of litigation (Trojanowsky Aff. ¶¶ 15-22, attached hereto as Exhibit 12), and the documents are clearly identified as communications pertaining to a specific project, loan, or facts related to the litigation. (Exhibit 2).

17.     In accordance with the parties' meet and confer process, Plaintiff reviewed the work product entries on its privilege log and determined that Log Nos. 6, 8, 14, 33, 34, 40, 41, 70, 78, 80, 128, 130, 136, 158–161, 205, 212, 213, 223, 226, 233, 235, 291, 296, 333, 337, 338, 345, 357, 358, 362, 403, and 449 were either duplicative or were not work product.  (Exhibit 3).  These entries have been deleted from Plaintiff's revised log. (Exhibit 2).

18.     In addition, Plaintiff has revised Log Nos. 9, 11, 25, 27, 31, 37, 69, 79, 87, 91, 127, 132–134, 165, 167, 187, 188, 207, 227, 236, 290, 293, 300, 305, 336, 339, 344, 360, and 450 to provide additional description, including the specific litigation (foreclosure litigation, the subject repurchase litigation, etc.) to which the work product pertains.  (Exhibit 2).  Now that the revised privilege log has been produced, it appears that the majority of Defendant's complaints regarding work product are moot.

19.     For the remainder of the work product entries, no additional description is required.  These entries all post-date Plaintiff's November 18, 2008 submittal of its final notice of breach (i.e., demand letter) to Defendant concerning the loans at issue in this litigation, which indicates, in addition to the document subject matter, that the documents are work product.  (Exhibit 2).

---

legal advice concerning revisions of the Pooling & Servicing Agreements at issue in this litigation.

**VI.     There is no time constraint that necessitated Defendant filing its premature Motion.**

20.     There is no time crunch, as Defendant suggests, which forced Defendant to file the Motion prematurely.  Defendant stated that the motion must be decided due to discovery deadlines, including a 30(b)(6) deposition on June 2, 2010, but Defendant was aware at the time the Motion was filed that Plaintiff was unavailable for deposition on June 2, because Plaintiff informed Defendant of that fact on <u>May 10</u>, a full week before Defendant filed its Motion.  (Exhibit 9, p. 1).  Moreover, on May 18, just one day <u>after</u> filing the Motion, Defendant formally agreed to release the June 2 deposition date. (Exhibit 10).

21.     The only relevant deadline for these purposes is the <u>August 19</u> discovery cut-off date, which is still several months away.[11]

<u>**ARGUMENT & AUTHORITIES**</u>

**I.     The Motion is premature.**

Local Civil Rule 37.1 requires that, prior to filing discovery-related motions, counsel for the parties "have met and conferred in good faith and, after a sincere attempt to resolve differences, have been unable to reach an accord."  See also Fed. R. Civ. P. 37(a)(1).  "Regarding all motions related to discovery … the court will refuse to hear any such motion" if the movant fails to comply with the good faith meet and confer process. <u>Schulte v. Potter</u>, 218 Fed. Appx. 703, 708, n.3 (10th Cir. 2007) (upholding magistrate judge's denial of a motion to compel for movant's failure to meet and confer).

---

[11] Defendant filed a nearly identical motion to compel in the parties' Nevada litigation on May 18, wherein Defendant also requested expedited review, including that Plaintiff file its response to the motion by May 25.  Plaintiff filed a motion to strike Defendant's motion to compel as premature, and also to deny expedited review, for the reasons set forth above.  As of the filing of this Response, the Nevada court has <u>not</u> ordered expedited review and at this point it is unlikely to do so since the requested due date for Plaintiff's response is tomorrow.

The meet and confer process was not concluded when Defendant filed its Motion, and Defendant incorrectly certifies that it has complied with Rule 37.1.  It is unbelievable that, despite Plaintiff's assurance on Friday, May 14 that it would submit a revised privilege log to Defendant the following week, Defendant pushed ahead with filing the Motion on Monday, May 17.  At the very least, Defendant should have realized there was a risk that Plaintiff's revisions might make some, if not all, of its Motion moot.  The May 14 e-mail sequence (Fact 13) is illustrative of Defendant's brash behavior.

Plaintiff has earnestly attempted to resolve any differences with Defendant concerning privilege logs without the Court's involvement.  This dates back to January 26, when Plaintiff e-mailed Defendant to suggest that the parties reach an agreement regarding the specific contents of their logs.  (Fact 2).  Defendant ultimately proposed a privilege log format, upon which Plaintiff agreed and relied in creating its log, only for Defendant to go back on this agreement and argue that Plaintiff's log was deficient because it did not contain an attachment column that Defendant never proposed.  (Facts 8, 9).  In the interest of compromise, Plaintiff ultimately agreed to revise its privilege log to include additional attachment information, but it cost Plaintiff a considerable amount of time and energy chasing Defendant's moving target, which is exactly what Plaintiff sought to avoid by reaching an agreement on privilege log format in the first place.

Since Defendant's April 6 letter, Plaintiff has worked to negotiate revisions to both parties' logs.  These negotiations and revisions were continuing, and as recently as Plaintiff's May 17 letter, Plaintiff indicated a willingness to discuss compromises regarding all of the remaining issues.  Defendant argues it had reached an impasse, despite Plaintiff's numerous concessions, and was running out of time to resolve the privilege log issues.  However, Defendant has concocted a non-existent urgency and has

misinformed the Court in stating that the motion must be decided due to discovery deadlines, including a 30(b)(6) deposition on June 2, 2010 which had not, in fact, been confirmed due to Plaintiff's unavailability on that date.  (Fact 20).  The only relevant deadline for these purposes is the August 19 discovery cut-off date, which is still several months away.  (Fact 21).

Because the meet and confer process concerning the parties' privilege logs has not been completed in good faith, it is a waste of this Court's time and resources – not to mention the time Plaintiff has been required to spend in drafting this response – to consider Defendant's Motion, particularly now that Plaintiff has produced a revised privilege log.  Of course, if Defendant finds additional "deficiencies" in Plaintiff's revised log, Plaintiff reserves the right to also respond to these, which is another reason why the Motion is premature.

The Court should deny the Motion with leave to file a revised motion, if necessary, after review of Plaintiff's revised privilege log and after good faith completion of the meet and confer process.

## II.    All documents listed on Plaintiff's revised privilege log are attorney-client privileged or work product, and the revised privilege log provides adequate information to assert these claims.

When a party withholds information otherwise discoverable by claiming that the information is attorney-client privileged or work product, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Plaintiff has met this standard for every privileged document listed on its privilege log.

11

A.    Attorney Client Privilege

1.    *Plaintiff has adequately described each attorney-client privileged document to support the privilege.*

The attorney-client privilege extends to any communication where: (i) an attorney client relationship exists; (ii) the communication occurred for the purpose of receiving or giving legal advice; and (iii) the client intended the communication remain confidential. See U.S. v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998) (applying Oklahoma law); Chandler v. Denton, 741 P.2d 855, 865 (Okla. 1987).

> The status of the attorney is an important factor in determining the underlying purposes of the communication.  For example, **the unstated operating presumption in situations involving outside retained counsel with limited responsibilities to the client** (e.g., strictly legal capacity as opposed to business responsibilities because of a corporate position that he holds), **is that the consultations were held for the purpose of obtaining legal advice or assistance**.

Lindley v. Life Investors Ins. Co. of America, 2010 WL 653022, *5 (N.D. Okla. 2010) (quoting Paul R. Rice, 1 Attorney-Client Privilege in the United States, § 7:1 (Thomson West 2d ed. 1999) (emphasis added)).

Every attorney-client privileged document listed on Plaintiff's privilege log is clearly identified as a communication between attorney(s) and client(s) pertaining to a specific project, loan, or facts related to the litigation.   (Fact 16).   Nearly every communication listed as attorney-client privileged involved outside counsel specifically retained by Plaintiff for purposes of litigation.   (Fact 16).   Therefore, Plaintiff has included sufficient, specific information to assert the attorney-client privilege for each document included on its privilege log.

Furthermore, Plaintiff's privilege log provides just as much description, if not more, than Defendant's privilege log.  When Plaintiff informed Defendant of the striking

similarity between certain descriptions on the parties' logs (Fact 6), Defendant responded by revising nearly <u>every</u> entry to simply add the words "for purposes of [providing/obtaining] legal advice." (Fact 10).  Thus, Defendant's argument regarding descriptions of privileged documents essentially amounts to a demand that Plaintiff must similarly add "for purposes of legal advice" to every entry.  This is problematic for two reasons:  First, Defendant's blanket modification of nearly every entry to add certain stock language does not suggest a good faith review or revision of <u>Defendant's</u> log. Second, the addition of these same words to every entry provides no additional information that was not already self-evident from the documents' appearance on the log in the first place.

Plaintiff did not ask Defendant to make such revisions, and Plaintiff is not required to engage in the same needless busy work.[12]  It is clear that the communications between attorney and client on Plaintiff's log, each discussing a clearly identified project, loan, or facts related to the litigation, pertains to legal advice.   Plaintiff's privilege log descriptions provide more than adequate information to support the assertion of attorney-client privilege.

> 2.   *Plaintiff's legal invoices are attorney-client privileged and work product.*

This Court has held in <u>Nelson v. Granite St. Ins. Co.</u>, 2009 WL 2252182, *2 (W.D. Okla. July 28, 2009) that "billing records and statements are not subject to discovery, because the information sought is irrelevant and/or contains descriptions

---

[12] Taken to its logical extreme, under Defendant's flawed approach, the very format of a log, including its inherent time-saving features, is problematic and separate full-blown narrative discussions regarding each privileged document should presumably be provided.

showing privileged matters (*e.g.*, subject matter of conversations, litigation strategy notations and other work product notations) which should be protected from disclosure."

In this case, Plaintiff's attorney's fees may become relevant, but not at this stage in the litigation. Plaintiff can only recover its attorney's fees incurred in the course of this litigation if it is ultimately successful in establishing Defendant's liability. Therefore, Plaintiff's attorney's fees are not relevant at this stage in the litigation, and will become relevant only if Plaintiff is successful in the liability phase of this lawsuit.[13]

In addition, where a prevailing party is entitled to recover its attorney's fees, courts do not typically require submission of actual legal invoices. An affidavit or other summary document is often sufficient. See, e.g., LaSalle v. CAPCO, 2006 U.S. Dist. LEXIS 27128 (S.D.N.Y. 2006); Greenville Imaging, LLC v. Washington Hospital Corp., 2008 U.S. App. LEXIS 21885, *7 (5th Cir. 2008) ("adequately detailed affidavit" sufficient to establish attorney's fees); Willhite v. Collins, 459 F.3d 866, 869 (8th Cir. 2006) (where party claimed that fees were "excessive, unwarranted, and unsubstantiated," court ordered and found acceptable "a detailed affidavit of attorney's fees and costs, showing the fees broken down on an hourly basis").

Regardless, in the interest of compromise, Plaintiff has previously disclosed to Defendant the amount of attorney's fees accrued to date,[14] and has offered to provide an updated amount.[15] However, Plaintiff clearly cannot produce its actual legal invoices

---

[13] Indeed, this is how the same parties have proceeded in similar litigation in the Southern District of Ohio, in Case No. 3:07-cv-449. After Plaintiff prevailed at trial on liability, the court separately considered the remedy, including attorney's fees.

[14] The amounts are included in the "Purchase Price" of each loan at issue in this litigation, previously produced to Defendant.

[15] Exhibit 10 to Defendant Motion, p. 4. In addition, Plaintiff offered in its most recent meet and confer letter of May 17 to consider other alternatives to producing the actual invoices. For example, Plaintiff would be willing to provide monthly breakdowns of fees and expenses.

14

K:\KPHA\A-C\12327 Crown Northcorp\0002 LaSalle Bank\Pleadings (USDC-WDOK; CV-08-1125-C)\Response to M2C - Priv Log.FINAL.doc

because these invoices contain highly-detailed descriptions of the work performed by counsel in representing Plaintiff, and are therefore rife with information subject to attorney-client privilege and work product protection.   In accordance with <u>Nelson v. Granite St. Ins. Co.</u>, Plaintiff's legal invoices are attorney-client privileged and work product, and cannot be produced.

> 3.    *The attorney-client privilege extends to documents shared between Plaintiff's counsel and certificateholders (Investors), on whose behalf this lawsuit is brought.*

Plaintiff's revised privilege log contains four (4) documents which are privileged pursuant to attorney-client privilege and the common interest doctrine.[16]   These documents involve communications between Plaintiff and/or Plaintiff's counsel and representatives of the Investors (as more specifically defined below) that Defendant alleges are not subject to the attorney-client privilege or the common interest doctrine. (<u>See</u> Defendant's Motion, p. 17).  Defendant's assertion is without support.

> a.    Facts supporting existence of attorney-client privilege and/or application of the common interest doctrine.

As set forth in Plaintiff's Amended Complaint, the loans at issue are contained in Real Estate Mortgage Investment Conduit ("REMIC") trusts, referred to more specifically in the Amended Complaint as the MF2 Trust and MF3 Trust (collectively, the "Trusts").  The loans in the Trusts were pooled into groups and collateralized into certificates which were in turn issued to investors (the "Investors" or "Certificateholders").  Crown NorthCorp, Inc. ("Crown"), was selected on behalf of the Trustee to act as the Special Servicer over all of the loans contained in the Trusts.  (<u>See</u>

---

[16] Defendant complains of eight (8) such documents, but Plaintiff has since revised its privilege log, resulting in a total of four (4) documents on the revised log.

Exhibit 11, § 3.01).  This case was brought by Plaintiff, by and through Crown as the Special Servicer, <u>for the benefit of the Investors</u>.

At all relevant times, Shepherd Advisors LLC[17] ("Shepherd") held the Controlling Class certificates for the Trusts.  As a result, Shepherd was the Controlling Class Representative, as more fully set forth in the Pooling and Servicing Agreement ("PSA").  (<u>See</u> Exhibit 11, §§ 1.01 and 6.07).  The obligations and responsibilities of the Controlling Class Representative include, among other things, advising the Special Servicer regarding any actions to be taken relating to any loans sent to special servicing, including the loans at issue.  (Affidavit of Mary Kooi[18] ¶ 6, attached hereto as Exhibit 13; Exhibit 11, § 6.07).  Moreover, the Controlling Class Representative may direct the Special Servicer to take, or refrain from taking, such other actions with respect to loans in the securitization.  (Kooi Aff. ¶ 6; Exhibit 11, § 6.07).  Therefore, pursuant to these contractual provisions, Crown sought the input and guidance of Shepherd in regards to any type of litigation implemented on behalf of the Investors, such as this one.  (Trojanowsky Aff. ¶ 7).  Based on Crown's and Shepherd's respective responsibilities under the PSA it is <u>essential</u> that Crown and Shepherd have the ability to freely exchange confidential information, such as litigation strategy, in order to further any litigation pending on behalf of the Investors in connection with the PSA.  (Trojanowsky Aff. ¶ 8; Kooi Aff. ¶ 8).

       b.     Attorney-client privilege applies.

---

[17] Plaintiff's analysis regarding the common interest doctrine is focused on its communications with Shepherd because Defendant's motion addresses only those communications.  However, the analysis and ultimate conclusion applies to all Investors.

[18] The Mary Kooi Affidavit attached hereto as Exhibit 13 is currently unexecuted.  Ms. Kooi has reviewed and approved this affidavit, but cannot provide her signature until May 26.  Plaintiff will supplement this exhibit accordingly.

The attorney-client privilege, as defined in Section II(A) above, protects communications shared between counsel for Plaintiff (by and through Crown) and the Investors.   Shepherd believed Plaintiff's counsel represented Shepherd's interests in connection with Plaintiff's prosecution of this case.   (Kooi Aff. ¶ 9).   Communications shared between Shepherd and Plaintiff's counsel in connection with this litigation were for the purposes of providing/receiving legal advice and Shepherd always understood these types of communications would remain confidential.   (Kooi Aff. ¶ 10).   Thus, the attorney-client privilege applies to protect any communications between Plaintiff's counsel and Shepherd regarding this case.

<blockquote>

c.      The common interest doctrine is also applicable.
</blockquote>

Furthermore, the common interest doctrine also applies and should protect the documents at issue from production.   Defendant asserts that the doctrine is not applicable because Plaintiff and the Investors do not share "an identical legal interest."   (See Defendant's Motion, p. 17).   That is not the case.

Plaintiff and Shepherd have a common interest in the prosecution of Plaintiff's claims against Defendant.   (Trojanowsky Aff. ¶ 9; Kooi Aff. ¶ 11).   The common interest shared between Plaintiff and Shepherd is, generally, to protect the assets in the Trusts, and, specifically to recover from Defendant those damages suffered as a result of Defendant's breaches of various representations and warranties that Defendant made regarding the loans at issue.   (Trojanowsky Aff. ¶ 10; Kooi Aff. ¶ 11).   Both Shepherd and Plaintiff agree that their common interest is best served if they and their counsel are able to share information relating to their common interest in writing.   (Trojanowsky Aff. ¶ 11; Kooi Aff. ¶ 12).   To that end, Plaintiff and Shepherd intend that all communications entitled to protection under the attorney-client privilege and/or work-product doctrine

would be protected under the common interest doctrine.  (Trojanowsky Aff. ¶ 12; Kooi Aff. ¶ 12).

It is universally accepted that persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other in order to more effectively prosecute or defend their claims without waiving privileged attorney-client communications.  See In re Grand Jury Subpoenas, 902 F.2d 244 (4th Cir. 1990); In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120 (3rd Cir. 1986); LaSalle v. Lehman Brothers Holdings, Inc., 209 F.R.D. 112 (D. Md. 2002); Metro Wastewater Reclamation Dist. v. Continental Cas. Co., 142 F.R.D. 471, 476 (D. Colo. 1992) ("It is well established that not every disclosure of attorney-client communications constitutes an invasion of the privilege . . . . [c]ommunications shared with third persons who have a **common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship**.") (citing Hodges, Grant & Kaufmann v. United States Gov't., 768 F.2d 719, 721 (5th Cir.1985); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146 (D.S.C.1974) (emphasis added)).  As the First Circuit has noted:

> Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: **persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims**.

> In re Grand Jury Subpoenas, 902 F.2d at 249 (emphasis added).

A "common interest" exists when the parties cooperate in order to achieve a common objective.  Federal Deposit Insurance Corp. v. Ogden Corp., 202 F.3d 454 (1st

18

Cir. 2000).  The Investor's objective in this case and Plaintiff's objective are precisely aligned and their communications were conducted in order to achieve that common objective.  The alignment of interests between a special servicer and the certificate holders/investors is illustrated by the facts and holding of <u>LaSalle Bank N.A. v. Lehman Brothers Holdings, Inc</u>., 209 F.R.D. 112 (D. Maryland 2002), which was a repurchase lawsuit just as this case is.

In <u>Lehman</u>, the special servicer for a group of loans brought an action in the name of the trustee of the loan pool, LaSalle Bank (the <u>identical</u> party that is Defendant is this matter), for specific performance and damages for breach of contract stemming from the transfer of mortgages and notes covering environmentally contaminated property.  <u>Id</u>. at 116.  Much like the case here, the seller of the mortgages filed a motion to compel production of privileged documents withheld from production on the basis of the common interest doctrine which were exchanged between the trustee, LaSalle Bank, and the special servicer.  <u>Id</u>. at 115.  The seller/movant argued that the common interest doctrine was not applicable.  <u>Id</u>.  The <u>Lehman</u> Court disagreed noting that "[i]t is quite apparent on the record here that LaSalle and [the special service] share a common interest in this litigation."  <u>Id</u>. at 116.

The court relied on several facts in reaching this conclusion.  First, as is the case here, the special servicer was charged by way of the PSA with the responsibility of handling defaulted loans like the one at issue in the <u>Lehman</u> case.  <u>Id</u>.  Second, the court held that LaSalle, as trustee, and the special servicer clearly have a "common legal interest in protecting the rights of the certificate holders."  <u>Id</u>.  Likewise, in the case at bar, Plaintiff and Shepherd (i.e., the representative for the controlling class of Investors) have a common legal interest in protecting the rights of the Certificateholders/Investors.

Third, in <u>Lehman</u> the parties acknowledged their common interest relationship by way of a formal agreement, commonly referred to as a joint defense agreement.  Similarly, Crown and Shepherd executed a joint defense agreement in connection with the Ohio Lawsuit[19] and have operated under the same terms and conditions in this case.  (<u>See</u> Kooi Aff. ¶ 14).  Lastly, the <u>Lehman</u> Court recognized that the parties "have cooperated through ongoing common enterprise to formulate and implement a common legal strategy." <u>Id</u>. at 116 – 117.  Plaintiff and Shepherd cooperate, as required by the PSA, in connection with pursuing this case against Defendant.  (Trojanowsky Aff. ¶ 13; Kooi Aff. ¶ 13).

Just as in <u>Lehman</u>, "it is apparent" that Plaintiff (through Crown as the special servicer) and the Investors have a common interest in this case.  In fact, the current case presents an even stronger basis for application of the common interest doctrine than that of <u>Lehman</u> because in this case the communications are actually between Plaintiff and the Investors (i.e., the real party in interest).  <u>See In re Grand Jury Subpoenas</u>, 902 F.2d at 249 (applying the common interest doctrine between the named plaintiff and a non-party that stood to benefit from the action referring to the non-party as the "real party in interest.").[20]  Whereas in <u>Lehman</u>, the communications were between two different entities, the trustee and the special servicer, both of whom were acting on behalf of the certificateholders.

---

[19] The Ohio Lawsuit is in reference to the companion case filed in Ohio federal court, *Wells Fargo Bank, N.A. v. LaSalle Bank National Association*, Case No. 3:07cv0449, S.D. Ohio (the "Ohio Lawsuit").

[20] In determining the applicability of the common interest doctrine, courts also consider whether the parties reasonably believed their communications would remain confidential.  <u>Ogden</u>, 202 F.3d at 463; <u>United States v. Bay State Ambulance and Hospital Rental Service</u>, Inc., 874 F.2d 20, 28 (1st Cir. 1989).  In this case, it is clear that the Investors intended their communications with counsel for Plaintiff to remain confidential.  (<u>See</u> Kooi Aff. ¶ 10).

Moreover, because Defendant successfully argued to the <u>Lehman</u> Court that communications between a special servicer and the purchaser of the loans **are** protected under the common interest doctrine, Defendant should be precluded, by the doctrine of judicial estoppel, from taking an opposition position in this case.   "The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." <u>Griffith v. Wal-Mart Stores</u>, 135 F.3d 376, 380 (6th Cir. 1998); <u>see also</u> <u>Paup v. Gear Products, Inc</u>., 327 Fed. Appx. 100, 106 (10th Cir. 2009) (applying Oklahoma law) ("Judicial estoppel is an equitable doctrine aimed at protecting the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . [w]here a party successfully asserts a position in a legal proceeding, **he or she may not assert a contrary position in later proceedings simply because his [or her] interests have changed**.") (citation and internal quotations omitted)).   Defendant successfully argued in <u>Lehman</u> that the common interest doctrine applied and now that Defendant's "interests have changed," Defendant asserts that a common interest does <u>not</u> exist between a Plaintiff Trustee (through the special servicer), and the Investors.   Such a position is inconsistent and the doctrine of judicial estoppel should prohibit it.

Every indication in the record establishes that Plaintiff's interests are identical to those of the Investors (and thus Shepherd) in this case.   Thus, the documents at issue are, at a minimum, protected from production based on the common interest doctrine. Alternatively, the documents at issue are certainly subject to the work-product doctrine as they contain counsel's strategies regarding the litigation.

      B.    <u>Work Product</u>

          1.   *Plaintiff has adequately described each work product document sufficiently to support work product protection.*

21

Except in limited circumstances, the Federal Rules prohibit discovery of documents "that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney…." Fed. R. Civ. P. 26(b)(3)(A). Work product protection extends to documents prepared during litigation, including external documents and information gathered for purposes of the litigation. See Nelson, 2009 WL 2252182 at *2 (holding that a law firm's "gathered medical records, documents and information to advise defendant concerning legal matters" constituted work product). "One who prepares a document in anticipation of litigation is not acting in the regular course of business." Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335, 342 (10th Cir. 1995).

Defendant complains that Plaintiff's privilege log does not provide adequate descriptions to support assertions of work product protection or, in some instances, the dates of documents indicate that they were likely prepared in the ordinary course of business.

In accordance with the parties' meet and confer process, Plaintiff reviewed its privilege log and determined that a number of entries were duplicative or that the documents at issue were not work product. Plaintiff deleted these entries from its revised log. (Fact 17). In addition, Plaintiff revised a number of work product entries to provide additional description, including the specific litigation (foreclosure litigation, the subject repurchase litigation, etc.) to which the work product pertains. (Fact 18). As previously stated, it is unfortunate Defendant insisted on filing its Motion after Plaintiff informed Defendant that a revised privilege log would be issued within days. Now that the revised privilege log has been produced, it appears that the majority of Defendant's complaints regarding work product are moot.

22

For the remainder of the work product entries, no additional description is required.  These entries all post-date Plaintiff's November 18, 2008 submittal of its final notice of breach (i.e., demand letter) to Defendant concerning the loans at issue in this litigation.   (Fact 19).   This provides sufficient evidence, when coupled with the descriptions provided, that these documents constitute work product communications between clients in anticipation of, or pertaining to, litigation.

Furthermore, Defendant provides no greater level of description for its own claimed work product documents than the descriptions provided on Plaintiff's log.  (Fact 7).  Defendant revised every work product entry to add the words: "in anticipation of litigation" (Fact 11), but this exercise was unnecessary.  As discussed in Section A(1) above, simply adding stock language such as "in an anticipation of litigation" or "for purposes of legal advice" is a silly, busy-work exercise that turns the privilege log exercise into a farce.

Plaintiff has carefully reviewed and revised its privilege log in accordance with the meet and confer process, and has provided sufficient information to claim work product protection for each such document included on its log.

> 2.   *LaSalle has failed to demonstrate that it has a substantial need for Plaintiff's work product.*

As a throw-away argument, Defendant contends that even if Plaintiff's documents are deserving of work product protection, Defendant should still have access to them due to a "substantial need."  Defendant falls far short of satisfying this steep burden.  A party may discover work product materials if the party can show "that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  In Nelson, the plaintiff subpoenaed a law firm's work product, arguing that it had a "substantial and

overwhelming need" for the firm's files because "[w]ithout it, plaintiff contends she will not know all the information defendant used, considered and relied upon in denying her claim." 2009 WL 2252182 at *1. This Court ruled that the plaintiff had not demonstrated a substantial need. "Simply stated, the Court finds there is no undue hardship accruing to plaintiff to substantiate delving into the attorney-client communications or defendant or its counsel's work product." Id. at *2. This same reasoning applies with equal force to work product created by clients in anticipation, or during the course, of litigation, which is just as much work product as documents created by counsel.

Defendant has not met its burden of demonstrating it has a substantial need for Plaintiff's work product. Defendant claims it requires this information because "Plaintiff has produced scant information regarding any actions it has taken to mitigate its claimed damages ... such as documents relating to foreclosure...." In fact, Plaintiff has produced more than 1,672 pages just from its legal files pertaining to foreclosure and/or receivership of the subject properties,[21] not to mention many other documents pertaining to foreclosure. If Defendant believes that Plaintiff has produced inadequate documentation to demonstrate that it has mitigated its damages, this is certainly an argument Defendant can attempt to make to the jury. It is not an excuse to pry into Plaintiff's protected work product.

Defendant also claims that it "should be able to explore any inconsistent positions Plaintiff has taken regarding the past and current assertions relating to the representations and warranties in the MLPA...." Plaintiff's positions regarding the alleged breaches of representations and warranties are stated in the breach notices issued for each loan. Even

---

[21] KBOK000001-KBOK001017 and WCOK000001-WCOK000655.

though such documents would arguably constitute work product, Plaintiff has <u>voluntarily</u> produced all draft breach notices.  Thus, Defendant already has the documents it requests.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Motion be denied in its entirety, and that the Court award Plaintiff its attorney's fees incurred in defending against Defendant's premature Motion.

Respectfully submitted,


*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar, OBA #11470
Crystal A. Johnson, OBA #21715
Conner & Winters, LLP
1700 One Leadership Square
211 N. Robinson Avenue
Oklahoma City, OK 73102
Telephone: (405) 272-5711
Facsimile: (405) 232-2695

~ AND ~

Paul D. Snyder*
SNYDER LAW FIRM LLC
11551 Granada, Suite 100
Leawood, Kansas 66211
Telephone:  (913) 685-3900
Facsimile:  (913) 685-3902
*Licensed only in Kansas and
Missouri
(Admitted in this case *pro hac vice*)

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2010, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic to the following ECF registrants:

Bruce W. Day
Joe E. Edwards
Tara A. LaClair
Day Edwards Propester & Christensen PC
210 W Park Ave., Suite 2900
Oklahoma City, OK 73102-5605
Telephone: (405) 239-2121
Facsimile: (405) 236-1012
Email: bruceday@dayedwards.com
Email: tlaclair@dayedwards.com

Gregory A. Markel
Lauren U. Y. Lee
Jason M. Halper
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: greg.markel@cwt.com
Email: lauren.lee@cwt.com
Email: jason.halper@cwt.com

*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar