IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) WELLS FARGO BANK, N.A. | ) | |
| as Trustee for the Certificateholders of | ) | |
| Commercial Mortgage Pass-Through | ) | |
| Certificates, Series 2006-MF2 and | ) | |
| 2006-MF3, acting by and through | ) | |
| Crown NorthCorp, Inc., as | ) | Case No. CIV-08-1125-C |
| Special Servicer, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LaSALLE BANK NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wells Fargo Bank ("Wells Fargo") brought suit, in its capacity as Trustee for certificateholders of commercial mortgage-backed securities, against Defendant LaSalle Bank National Association ("LaSalle")[1] seeking damages and specific performance, pursuant to the Mortgage Loan Purchase Agreement ("MLPA"), requiring Defendant LaSalle to repurchase three loans contained within the securities. Presently, Plaintiff moves this Court for partial summary judgment on its claimed breaches of Exhibit B ¶ 10 and ¶ 23 warranties as well as various issues of law, and Defendant moves for summary judgment on all of Plaintiff's claims as well as the issues of proper notice and materiality.

---

[1] In May 2008, LaSalle was acquired by Bank of America and subsequently assumed its name. For purposes of this Order, the Court will continue to refer to Defendant as LaSalle. (Pl.'s Am. Compl., Dkt. No. 41, at 5; Def.'s Br., Dkt. No. 267, at 7.)

## I.  BACKGROUND

Although this dispute involves alleged breaches of warranty regarding three specific loans, it implicates and arises out of the broader context of the recently tumultuous mortgage-backed securities market.  Defendant LaSalle originated the loans in question which were later bundled into a security interest by LaSalle's assignee, LaSalle Commercial Mortgage Securities, Inc. ("LaSalle Commercial").  (Pl.'s Am. Compl., Dkt. No. 41, at 2-3.) These three loans were mortgaged with commercial multi-family housing units purchased by multiple entities all with the same principal, Kevin Flessner, who also acted as guarantor of the loans.[2]  (Id.)

Before these loans were securitized, Defendant LaSalle sold the loans to LaSalle Commercial pursuant to the MLPA, in which LaSalle warranted certain attributes of the loans to LaSalle Commercial.  (Id. at 19.)  LaSalle Commercial then bundled these mortgages into a security and transferred the mortgages into Trusts, the Series 2006-MF2 and 2006-MF3 Trusts ("MF2 and MF3 Trusts"),[3] pursuant to a Pooling and Servicing Agreement (PSA).  (Id. at 19-20.)  The MF2 PSA and MLPA were executed on the same day, March 30,

---

[2]   The Royal Oak Loan, secured by property in Oklahoma City, Oklahoma, and the Hillandale Loan, secured by property in South Carolina, were two out of 488 loans comprising the MF2 Trust; the Heritage Ridge Loan, also secured by property within Oklahoma City, Oklahoma, was one of 438 loans comprising the MF3 Trust.  (Def.'s Br., Dkt. No. 267, at 12.)

[3]   Specifically, these were Real Estate Mortgage Investment Conduit ("REMIC") trusts, which allow, under the Internal Revenue Code, the pooling of mortgages the beneficial ownership of which are sold, in the form of certificates, to investors or certificateholders.  Often, the loans in these trusts are "conduit" loans which are originated for purposes of inclusion in a REMIC trust. REMIC trusts are often created for beneficial tax purposes.  (Pl.'s Am. Compl., Dkt. No. 41, at 2-3; Def.'s Br., Dkt. No. 267 Ex. 3.)

2006, and the MF3 PSA and MLPA closing date was June 29, 2006.  (Id. at 1.)  Under the

PSA, LaSalle Commercial assigned the warranties, rights, and interests it had acquired in the

MLPA to the Trustee, Plaintiff Wells Fargo, for the benefit of the certificateholders.  (Id. at

20.)  In the PSA, certain MLPA warranties were excepted from assignment to Plaintiff Wells

Fargo.  (Def.'s Br., Dkt. No. 267 Ex. 3, at 55.)

The certificates were rated into different levels, or "traunches," pursuant to the level

of risk associated with the loans.[4]  (Id. at 3.)  Forum Structured Real Estate Debt, LP

("Forum")[5] purchased the lowest-rated certificates and therefore is referred to as the

"B-piece" investor.  (Id. at 1 & n.1.)  Forum, as the B-piece and "controlling class" investor,[6]

was entitled to certain rights before the security agreement closed, including the right to

review the loan documents and the option to kick out loans it deemed too risky.  (Id. at 1-2.)

Forum asserted both of these rights and after reviewing the loans contained in the security,

opted to kick out certain loans from the Trusts.  (Id. at 11.)

---

[4] See generally Talcott J. Franklin et al., Mortgage and Asset Backed Securities Litigation Handbook § 2:11 (2010).

[5] Forum's name has since changed to Stadium Fund, LP; it remains the B-piece investor, but to avoid confusion, this Court will continue to refer to this entity by its original name, Forum, as the parties do.

[6] By acquiring 25% of the lowest-rated certificates, Forum became the "controlling class" under the PSA.  (Def.'s Br., Dkt. No. 267, at 3.)

After securitization, the three loans at issue went into default and the special servicer,[7] Crown NorthCorp (Crown), began to suspect a possible breach.  (Id. at 12.)  Under the MLPA, if Plaintiff discovered a breach of warranty, it could elect to have Defendant repurchase the specific breaching loans or give Defendant the opportunity to cure the breach.  (Id. Ex. 1 § 6(g).)  Here, Crown, acting in its capacity as special servicer, demanded that LaSalle repurchase or substitute new loans for the three violating loans.  LaSalle refused to do either after disagreeing that the loan defaults were caused by any alleged breach of warranty.  (Id. at 12.)

Plaintiff asserts Defendant must repurchase, pursuant to the MLPA, three particular loans it deems violated both the PSA and MLPA warranties:  the Royal Oak Loan, the Hillandale Loan, and the Heritage Ridge Loan.  (Pl.'s Br., Dkt. No. 265, at 2.)  No one disputes that the guarantor and principal of the entity borrowers of these loans, Mr. Flessner, committed fraud in securing these loans.  (Id. at 2-3; Def.'s Br., Dkt. No. 267, at 24.)  In each of the loan applications, Mr. Flessner asserted that he was purchasing the property when he was effectively refinancing the property in an amount over a million dollars above the actual sales price.  (Pl.'s Br., Dkt. No. 265, at 9-10, 13-14, 20.)

Mr. Flessner accomplished this fraud by creating different limited liability corporations and transferring the property interests among those entities so that it appeared as if he was purchasing the property, when he was actually transferring the property from one

---

[7] The special servicer is the entity that services defaulted loans or loans with special deficiencies.  Franklin et al., supra note 4, § 1:8.

of his own entities.  (Id.) LaSalle's underwriter noticed and questioned the discrepancies between the title owners and the sellers under the sales contracts regarding the Royal Oak and Hillandale Loans, but was satisfied as to these discrepancies by addenda Mr. Flessner provided claiming that the contract sellers had signatory rights for the title owners.  (Id. at 43-44.)  The discrepancy went unnoticed as to Heritage Ridge Loan, where the record title owner was Heritage Ridge Apartments, LLC, and the contract seller was Heritage Ridge Apartments.  (Def.'s Br., Dkt. No. 280, at 41.)

Plaintiff Wells Fargo asserts that by originating these loans, Defendant LaSalle breached several warranties under the MLPA.  Specifically, Plaintiff alleges that Defendant breached § 6(a)(viii), and Exhibit B ¶¶ 10(a), 10(b), 13, 35, and 23.  Plaintiff now moves for summary judgment as to the breaches of Exhibit B ¶ 10(a) and (b), ¶ 23, and on specific issues of law regarding whether a breach must be material, implications of the B-piece investor's due diligence on Defendant's liability under the MLPA, the meaning of origination, and finally whether Defendant's failure to follow its own guidelines breached customary industry standards.  (Pl.'s Br., Dkt. No. 265, at 3-4.)  Defendant seeks summary judgment on all of Plaintiff's claims; additionally, Defendant moves for summary judgment on Plaintiff's alleged failure to give proper notice as required by the MLPA and PSA, and on Plaintiff's failure to prove any material breach caused a material and adverse effect. (Def.'s Br., Dkt. No. 267, at 4-6, 47-48.)

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000).  The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it affects the disposition of the substantive claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986).  A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact[,] consider the fact undisputed for purposes of the motion[,] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is entitled to it[,] or issue any other appropriate order." Fed. R. Civ. P. 56(e).  While addressed in the same Order, Plaintiff's and Defendant's motions will be considered

separately by this Court carefully drawing all reasonable inferences against the party whose motion is then under consideration.

### III.  APPLICABLE LAW

As complete diversity exists between the parties and the requisite amount in controversy is met, this Court has proper subject matter jurisdiction in this case.  28 U.S.C. § 1332.  In diversity actions, federal courts apply the choice-of-law rules of the state in which the court sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941); Shearson Lehman Bros., Inc. v. M & L Invs., 10 F.3d 1510, 1514 (10th Cir. 1993).  Under Oklahoma law, contractual choice-of-law provisions are evaluated under the analysis set forth in the Restatement (Second) of Conflict of Laws.  Williams v. Shearson Lehman Bros., Inc., 1995 OK CIV APP 154, ¶ 14, 917 P.2d 998, 1002; Dean Witter Reynolds, Inc. v. Shear, 1990 OK 67, ¶ 1, 796 P.2d 296, 296.  This Court has previously held the parties' MLPA choice-of-law provision enforceable, and the parties do not now dispute its applicability; therefore, New York law governs the substantive issues in this case.  (Order, Dkt. No. 211, at 5; Def.'s Br., Dkt. No. 267 Ex. 1, at 12.)

## IV.  DISCUSSION

### A.  *MLPA § 6(a)(viii)*

Plaintiff claims that Defendant breached its warranty under MLPA § 6(a)(viii), on

which Defendant now moves for summary judgment.  Pursuant to PSA § 2.01(a),[8] LaSalle

Commercial assigned certain warranties to Wells Fargo, with specific exceptions:

> The Depositor, concurrently with the execution and delivery hereof, does hereby establish a trust, appoint the Trustee as trustee of the trust, assign, sell, transfer and convey to the Trustee, in trust, without recourse, for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in, to and under (i) the mortgage loans identified on the Mortgage Loan Schedule, (ii) Sections 1, 2, 3, 4, 5, 6(a) *(excluding clause (viii) of Section 6(a))*, 6(c), 6(d), 6(e), 6(f), 6(g), 11, 12, 14, 15, 16, 18, 19 and 20 of the Mortgage Loan Purchase Agreement . . . .

(Def.'s Br., Dkt. No. 267 Ex. 3, at 55) (emphasis added).  Under MLPA § 6(a)(viii) the seller,

LaSalle, warranted to the purchaser, LaSalle Commercial, that:

> it has no actual knowledge that any statement . . . or other document prepared and furnished or to be furnished by the Seller in connection with the transactions contemplated hereby . . . contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading[.]

(Id. Ex. 1, at 4.)

Plaintiff argues Defendant breached this warranty due to the misrepresentations in the

loan application documents.  Defendant counters that summary judgment in its favor on this

---

[8] This provision has identical language in both the MF2 and MF3 Trusts.  (Def.'s Br., Dkt. No. 267, at 20.)

matter is warranted as MLPA § 6(a)(viii) is specifically excepted from the assignment provision under the PSA.  Therefore, Defendant argues, Plaintiff has no standing to assert a violation of this warranty.  Additionally, Defendant argues that even if the provision was not excepted from assignment, Plaintiff failed to prove Defendant had actual knowledge of these misrepresentations as is required to trigger liability.

Plaintiff claims as assignee of LaSalle Commercial it has a right to enforce all warranties made by LaSalle to LaSalle Commercial in the MLPA, regardless of the exception in the PSA.  Plaintiff argues that this exception should not be enforced because the MLPA and PSA were contemplated as operating in conjunction,  (Pl.'s Br., Dkt. No. 282, at 22-23), but cites no case law as support for this tandem reading,[9] and the Court finds Plaintiff's cited provisions of the MLPA referring to the PSA inadequate to support Plaintiff's interpretation.

Plaintiff next asserts that the exclusion in PSA § 2.01(a) is ambiguous in light of the language of PSA § 2.03(b), which requires notice to be given when a party discovers "a breach of **any** representation or warranty with respect to a Mortgage Loan **set forth in . . . the Mortgage Loan Purchase Agreement** . . . ."  (Pl.'s Br., Dkt. No. 282, at 22.) Plaintiff places emphasis on the "any" prior to "representation or warranty" as the basis for rendering PSA § 2.01's exception of MLPA § 6(a)(viii) ambiguous.  This argument is not persuasive:  The assignment clause, § 2.01(a), specifically excluded the MLPA § 6(a)(viii) warranty, and a later provision governing notice of breach should not be read to render this

_____

[9] Even when reading the contracts in tandem, Plaintiff's argument is unpersuasive as reading the two together does not negate the specific exception of assignment in the PSA.

specific exception meaningless, even if the notice provision was inaptly phrased in light of the earlier exception.  Manley v. AmBase Corp., 337 F.3d 237, 250 (2d Cir. 2003) (rejecting one party's contractual interpretation as counter to New York law, "which disfavors interpretations that render contract provisions meaningless or superfluous"); Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985) (finding that "an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect").

Plaintiff maintains that this exception should not be enforced because it would not make sense for LaSalle to warrant this provision to LaSalle Commercial for the brief period in which LaSalle Commercial held the loans prior to securitization and transfer to the trust. While Plaintiff may have a sound argument as to the purpose or utility of such a short-lived warranty, it is not this Court's duty to rewrite contracts.  See Slatt v. Slatt, 477 N.E.2d 1099, 1100 (N.Y. 1985) ("In adjudicating the rights of parties to a contract, courts may not fashion a new contract under the guise of contract construction[.]"); Flag Wharf, Inc. v. Merrill Lynch Capital Corp., 836 N.Y.S.2d 406, 406 (App. Div. 2007) ("Courts will not rewrite contracts that have been negotiated between sophisticated, counseled commercial entities . . . .").  Under New York law, contracts are freely assignable in the absence of clear language prohibiting such assignment.  Oei v. Citibank, N.A., 957 F. Supp. 492, 522 (S.D.N.Y. 1997); Allhusen v. Caristo Constr. Corp., 103 N.E.2d 891, 893 (N.Y. 1952) ("When 'clear language' is used, and the 'plainest words [ . . . ] have been chosen[,'] parties

may 'limit the freedom of alienation of rights and prohibit the assignment.'" (quoting State Bank v. Cent. Mercantile Bank, 162 N.E. 475, 477 (N.Y. 1928))).

Plaintiff finally contends that this exception should not be enforced because in another action, a similar action between the parties in Ohio district court (Ohio action),[10] Defendant argued against Plaintiff's then-asserted claim of fraud by stating that "[p]laintiff could have attempted to assert a contract claim based on . . . Section 6[(a)(viii)] of the MLPA." (Pl.'s Br., Dkt. No. 282, at 23) (emphasis deleted). Defendant's statement in the Ohio action, pointing out a possible argument Plaintiff may assert, lends no support for ignoring the exception of assignment in the PSA; the assignment provision of the PSA is unambiguous in its exception of assignment regarding MLPA § 6(a)(viii). Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978) (finding the contract unambiguous as "the words . . . have a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion"). Because this warranty was excepted in the assignment of rights by unambiguous language, Plaintiff does not have standing to enforce or allege violation of it.[11]

_____

[10] The ongoing Ohio action involves the same parties and generally the same dispute, breach of warranty under the MLPA, but the underlying allegedly breaching mortgages and the specific warranties differ; Plaintiff also asserted a fraud and negligent misrepresentation claim in the Ohio action. Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, 643 F. Supp. 2d 1014, 1024 (S.D. Ohio 2009).

[11] As this Court finds that summary judgment for Defendant is warranted based on Plaintiff's lack of standing to assert breach of warranty under this MLPA provision, there is no need to address Plaintiff's and Defendant's assertions regarding whether Defendant had actual knowledge of Mr. Flessner's fraud.

Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's MLPA §6(a)(viii) breach-of-warranty claim is granted.

### B.  MLPA Exhibit B ¶ 10(a), (b)

Both Plaintiff and Defendant seek summary judgment on this breach-of-warranty claim.  Each allege entitlement to judgment as a matter of law based on opposite readings of the word "or" in the relevant warranty.  In MLPA Exhibit B ¶ 10(a), (b) (Warranty 10), LaSalle warranted that:

(a)     The Mortgage Loan documents for each Mortgage Loan contain enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, including realization by judicial or non-judicial foreclosure, and there is no exemption available to the related Mortgagor which would interfere with such right of foreclosure except any statutory right of redemption or as may be limited by anti-deficiency or one form of action laws or by bankruptcy, receivership, conservatorship, reorganization, insolvency, moratorium or other similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(b)     Each of the related Mortgage Notes and Mortgages are the legal, valid and binding obligations of the related Mortgagor named on the Mortgage Loan Schedule and each of the other related Mortgage Loan documents is the legal, valid and binding obligation of the parties thereto (subject to any non-recourse provisions therein), enforceable in accordance with its terms, except as such enforcement may be limited by anti-deficiency or one form of action laws or bankruptcy, receivership, conservatorship, reorganization, insolvency, moratorium or other similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law), and except that certain provisions of such Mortgage Loan documents are or may be unenforceable in whole or in part under applicable state or federal laws, but the inclusion of such provisions does not render any of the Mortgage Loan documents invalid as a whole, and such Mortgage Loan documents taken as

a whole are enforceable to the extent necessary and customary for the practical realization of the principal rights and benefits afforded thereby

(Def.'s Br., Dkt. No. 267 Ex. 1, at B-3 to -4) (emphasis added).

Plaintiff argues summary judgment on this warranty is appropriate because the two Oklahoma mortgages at issue, the Royal Oak and Heritage Ridge Mortgages, do not contain the required state statutory language to effectuate a nonjudicial foreclosure. Under the relevant Oklahoma statute, 46 Okla. Stat. § 43(A)(2)(a), there are certain requirements governing mortgage language:

[W]ith respect to any mortgage in which a power of sale is granted . . . the mortgage shall state in bold and underlined language, substantially the following:

"A power of sale has been granted in this mortgage. A power of sale may allow the mortgagee to take the mortgaged property and sell it without going to court in a foreclosure action upon default by the mortgagor under this mortgage[.]"

Id. (emphasis added). Plaintiff reads "shall" in the Oklahoma statute as "must" and cites Oklahoma case law interpreting "shall" the same.[12] As support for its interpretation of "or,"

---

[12] Burrell v. Burrell, 2007 OK 47,¶ 14 n.14, 192 P.3d 286, 290 n.14 ("Generally, the use of 'shall' signifies a legislative command. Nevertheless, there may be times when the term is permissive in nature." (citations omitted); Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 11, 33 P.3d 302, 307). See Barzellone v. Presley, 2005 OK 86, ¶ 35, 126 P.3d 588, 599-600; Cox v. State ex rel. Okla. Dep't of Human Servs., 2004 OK 17, ¶ 21, 87 P.3d 607, 615 ("Although the use of 'shall' generally signifies a legislative command, the term can be permissive." (footnotes omitted)); Minie v. Hudson, 1997 OK 26, ¶ 8, 934 P.2d 1082, 1086 ("The use of 'shall' by the Legislature is normally considered as a legislative mandate equivalent to the term 'must[,]' requiring interpretation as a command."); Texaco, Inc. v. Okla. City, 1980 OK 169, ¶ 9, 619 P.2d 869, 871 ("We have held that the words 'shall' and 'must' are generally mandatory when used in statutes, but can be construed to mean 'may' when no right or benefit depends upon the imperative use, when no public or private right is lost, or if such a reading would lead to great inconvenience."). The precise meaning of "shall" in this state statute presently need not be determined as the warranty

Plaintiff claims that LaSalle's own expert witness agreed with its interpretation of "or" in this warranty (Pl.'s Br., Dkt. No. 282, at 25-26) and cites an Iowa Supreme Court case which also reads "or" as nondisjunctive in the context of an Ohio statute (id. at 26); TLC Home Health Care, L.L.C.. v. Iowa Dep't of Human Servs., 638 N.W.2d 708, 713 (Iowa 2002).  Plaintiff argues that because these mortgages do not contain the relevant language in bolded or underlined font, these mortgages do not, as a matter of Oklahoma law, contain the adequate language to realize nonjudicial foreclosure and therefore violate this warranty.  Plaintiff's conclusion is based on its reading of the word "or" in Warranty 10(a) as nondisjunctive, (Pl.'s Br., Dkt. No. 265, at 41-42), which would require the ability to foreclose by both methods to satisfy the warranty.

Defendant asserts that it, not Plaintiff, is entitled to summary judgment on this warranty based on the opposite reading of "or" as a correlative conjunction.  Defendant reads the word "either" into the sentence so that the warranty would read, " . . . including realization by [either] judicial or nonjudicial foreclosure . . . ."  Defendant claims Plaintiff's argument as to its expert witness's opinion mischaracterizes the language in the warranty as well as the witness's testimony (Def.'s Br., Dkt. No. 295, at 15), and cites the New York federal district court case Portside Growth & Opportunity Fund v. Gigabeam Corp., Inc., 557 F. Supp. 2d 427, 431 (S.D.N.Y. 2008), as support for its reading of "or" as disjunctive

language is ambiguous rendering summary judgment on this breach-of-warranty claim inappropriate.

because the New York district court found that "the ordinary presumption [is] that the term 'or' expresses an alternative." Id. at 431.

No one disputes that Plaintiff exercised its judicial foreclosure rights to successfully sell the mortgaged properties.  (Def.'s Br., Dkt. No. 267, at 23-24.)  Rather, the dispute lies in whether Defendant warranted that both options would be available to Plaintiff.  If it did, then Plaintiff alleges LaSalle breached that warranty as the language in the mortgages fails to satisfy the requirements outlined in the relevant Oklahoma statute, 46 Okla. Stat. § 43(A)(2)(a).  If the "or" is read as disjunctive, then Defendant could not have breached this warranty because Plaintiff successfully exercised its judicial-foreclosure rights, and Defendant's Motion for Summary Judgment on this claim should be granted.

Under New York law, "'when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment.'" LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005) (quoting Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005)).  A contract is ambiguous if it is reasonably susceptible to more than one interpretation; the determination of whether a contract's terms are ambiguous is a question of law and is evaluated in light of the entire contract. Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988).

Neither parties' cited case law lend support for their arguments:  Defendant's citation to the New York district court case is not compelling, as the opponent of the disjunctive reading of "or" in that case failed to give the court a plausible explanation of why the clauses

15

did not independently trigger the contractual right at issue.  Portside, 557 F. Supp. 2d at 431.

Plaintiff's cited case concerns a state court interpreting "or" within the meaning of a specific

state statute.  TLC Home Health Care, 638 N.W.2d at 713 ("Given the words and phrases

preceding 'or' in this particular statute, we conclude 'or' means both and is used as a word

of inclusion, rather than exclusion. In this context, we will not give 'or' disjunctive

character.").

Considering the arguments for both readings of "or" in this warranty, neither party has

sufficiently established its interpretation to eliminate the reasonableness of the other's

interpretation.   This provision is reasonably susceptible to more than one reading and

therefore is ambiguous contractual language.   Because the meaning of this contractual

warranty provision is ambiguous, a question of fact arises as to the intent of the parties.

Accordingly, neither party is entitled to summary judgment on this claim.

### C.  MLPA Exhibit B ¶ 13

As to this claim, only Defendant moves for summary judgment.  Plaintiff counters

there remain issues of material fact that make summary judgment inappropriate.  The relevant

warranty, MLPA Exhibit B ¶ 13 (Warranty 13), states:

> There exists no material default, breach, violation or event of
> acceleration (and, to Seller's knowledge, no event which, with the passage of
> time or the giving of notice, or both, would constitute any of the foregoing)
> under the documents evidencing or securing the Mortgage Loan, in any such
> case to the extent the same materially and adversely affects the value of the
> Mortgage Loan and the related Mortgaged Property; provided, however, that
> this representation and warranty does not address or otherwise cover any
> default, breach, violation or event of acceleration that specifically pertains to

any matter otherwise covered by any other representation and warranty made by the Seller.

(Def.'s Br., Dkt. No. 267 Ex. 1, at B-5.)

Plaintiff contends this warranty was breached due to the breach of the guarantor's warranty in the three mortgages at issue.  In the mortgages, Mr. Flessner, as guarantor, warranted that:

> Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to Lender by Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty[.]

(Pl.'s Br., Dkt. No. 282 Ex. 19 § 5(e)).  While Mr. Flessner signed the mortgages at issue in his capacity as managing member of the buying–borrowing entities, (Def.'s Br., Dkt. No. 267 Ex. 21), he signed guaranteeing the mortgages in his individual capacity.  (Pl.'s Br., Dkt. No. 265 Ex. 19.)  Plaintiff argues Mr. Flessner breached this guaranty when he failed to accurately provide a list of property as required by the Schedule of Real Estate Owned (SREO) as well as when Mr. Flessner defrauded LaSalle in procuring the underlying loans. Plaintiff claims property and values listed in Mr. Flessner's SREO breached the § 5(e) warranty and caused Warranty 13 to be breached when the mortgages were securitized because documents evidencing or securing the mortgage loans—the guaranties—were in material default.

Defendant asserts collateral estoppel prohibits Plaintiff from claiming a misrepresentation in borrower loan application materials as the basis for a breach of Warranty 13 because in the Ohio action, the court found that Defendant did not warrant

17

possible misrepresentations by borrowers.  Wells Fargo, 643 F. Supp. 2d at 1033.  Defendant

also contends that summary judgment is appropriate because this warranty does not include

borrower misrepresentations.   Applications for mortgages, Defendant argues, are not

documents "evidencing or securing" the mortgage loan.   Therefore, any action by the

borrower cannot be the basis for breach of Warranty 13, including statements made by the

guarantor.  As to Plaintiff's assertion that the property values were improperly listed in Mr.

Flessner's SREO, Defendant claims that Plaintiff's only proof that the values were

incorrectly listed by Mr. Flessner is Plaintiff's expert witness's conclusions based on the

difference between the value Mr. Flessner listed and the tax-assessed value of those

properties by the county tax assessor, which Defendant claims fails to prove a breach of

guaranty § 5(e)—even if Warranty 13 included the guaranty warranties.

Collateral estoppel, also referred to as issue preclusion, prohibits parties from

relitigating the same issues once a final judgement on that issue has been rendered.  There

are specific requirements that must be met before the doctrine of issue preclusion applies:

> [O]nce a court has decided an issue of fact or law necessary to its judgment,
> the same parties or their privies may not relitigate that issue in a suit brought
> upon a different claim.   Issue preclusion prevents relitigation of facts and
> issues actually litigated and necessarily determined in an earlier proceeding
> between the same parties or their privies.

Strong v. Laubach, 153 F. App'x 481, 484 (10th Cir. 2005) (quoting State ex rel. Okla. Bar

Ass'n v. Giger, 2004 OK 43 ¶ 13, 93 P.3d 32, 38).   An issue is actually litigated and

determined if it is "properly raised in the pleadings, or otherwise submitted for determination,

and judgment would not have been rendered but for the determination of that issue." Okla.

Dep't of Pub. Safety v. McCrady, 2007 OK 39, ¶ 7, 176 P.3d 1194, 1199.  "'[T]he doctrine may not be invoked if the party against whom the earlier decision is interposed did not have a full and fair opportunity to litigate the critical issue in the previous case.'"  Strong, 153 F. App'x at 484 (quoting Nat'l Diversified Bus. Servs., Inc. v. Corp. Fin. Opportunities, Inc., 1997 OK 36, ¶ 11, 946 P.2d 662, 666-67).  Final judgment must be reached on the issue before this doctrine applies; a final judgment is rendered when "'no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought.'"  Am. Fin. Life Ins. & Annuity Co. v. Youn, 7 F. App'x 913, at **2 (10th Cir. 2001) (unpublished) (quoting Nealis v. Baird, 1999 OK 98, ¶ 53, 996 P.2d 438, 439); Depuy v. Hoeme, 1989 OK 42, ¶ 10 n.23, 775 P.2d 1339, 1343 n.23 ("While the 'finality' requirement has troubled courts and oft times its application may vary with the circumstances, all courts agree that, after *the expiration of appeal time when no appeal has been taken*, a judgment acquires the degree of finality requisite for the application of res judicata doctrine.").

Here, Defendant's characterization of the Ohio court's ruling is inaccurate:  The Ohio court ruled against Plaintiff in that action after finding that Plaintiff failed to show either that the borrowers warranted anything in Paragraph 27 of the mortgage at issue or that such a warranty was breached.[13]  The Ohio court did not hold that a borrower's misrepresentations

---

[13]  Specifically the Ohio district court stated:

> Wells Fargo points to no language in the two mortgages in which either borrower purports to warrant the accuracy of representation made in the loan application process.  The ordinary reading of the two remedies provisions quoted

could never be the basis for a breach of Warranty 13.  In addition to raising a Paragraph 27 breach as a basis for breach of Warranty 13, Plaintiff also argued to the Ohio court that a breach of guaranty could be a basis for breach of Warranty 13.  (Def.'s Br., Dkt. No. 267, at 27.)  In response, the Ohio court issued a Notation Order in which it granted Defendant's Motion to Exclude certain deposition designations addressing Plaintiff's guaranty argument "for the reasons given by Defendant."  (Id. Ex. 32.)

The Ohio court's actions in the parties' parallel litigation do not have the finality required to trigger collateral estoppel on these issues as the litigation in that case is ongoing. (Minute Entry for Continuing Bench Trial, Wells Fargo v. LaSalle, No. 3:07-CV-00449 (S.D. Ohio Nov. 26, 2010) (continuing the Ohio court's bench trial on damages in this action to December 13, 2010)).  Additionally, this Court is not persuaded that Plaintiff had a full and fair opportunity to litigate whether the breach of guaranty could be a basis for breach of Warranty 13 in the Ohio action.  Therefore, the doctrine of collateral estoppel does not

---

above [Paragraph 27 of the mortgages] would be to give LaSalle or its assignee a remedy if either borrower breaches a promise about future behavior, particularly paying the notes.
        On this point, there is no genuine issue of material fact and LaSalle is entitled to judgment as a matter of law.  The Court concludes that borrower misrepresentations made in the loan application process do not violate ¶ 27 of either mortgage and therefore their existence does not breach Representation and Warranty 13.

Wells Fargo, 643 F. Supp. 2d at 1033.  This Court agrees with Defendant and the Ohio district court that ¶ 27 does not contain the requisite language to grant Plaintiff a warranty of the borrower's misrepresentations. Rather, this provision is an acceleration clause which grants additional remedies when certain conditions are met.  Here, Plaintiff is not seeking a breach of Warranty 13 based on ¶ 27 of the mortgages; here, Plaintiff bases the breach of Warranty 13 on the guarantor's breach of warranty.

prevent the parties from litigating whether a breach of guaranty warranty § 5(e) caused Defendant to be in breach of Warranty 13 when the mortgages were securitized.

As to Defendant's argument that Warranty 13 does not include guaranty § 5(e), this Court agrees with Plaintiff that documents evidencing or securing the mortgage loan must include the guaranty executed in conjunction with the execution of the mortgages.  The parties do not dispute that Mr. Flessner failed to provide material facts regarding these loans, not just pertaining to his property schedule but also as to his misrepresentations regarding the property owners, contract sellers, and purported addenda proving signatory rights.  However, Defendant claims that these misrepresentations were made in Mr. Flessner's capacity as manager of the borrowing LLCs, not in his individual capacity as guarantor, rendering Warranty 13 inapplicable.  Plaintiff asserts Defendant is "splitting hairs" by distinguishing between Mr. Flessner in his individual capacity and Mr. Flessner as principal of the borrower entities.

Section 5(e)'s language is not seemingly limited to representations made solely by the guarantor in his individual capacity, but arguably include all statements made by the guarantor regardless of the capacity in which they were made.  The language, "nor <u>any statement </u>or certification as to facts previously furnished" is not ostensibly limited by those facts required to be furnished by the guarantor.  As more than one reasonable interpretation of this language exists, the language is ambiguous.  Therefore, this Court finds material issues of fact remain as to whether Defendant breached Warranty 13 when it included in the securitization allegedly defaulting mortgages due to the guarantor's misrepresentations and

possible breach of § 5(e).  Accordingly, Defendant has not met its burden of establishing that

no material facts remain at issue, and its Motion for Summary Judgment on this issue is

denied.[14]

### D.  MLPA Exhibit B ¶ 35

This warranty relates to the federal requirements of real estate appraisals of property

in federally-related transactions as promulgated under the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989 (FIRREA),12 U.S.C. §§ 3331 et seq., which was

enacted in response to the lack of national uniform appraisal standards.  H.R. Rep. No. 101-

54(I), at 311 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 107.  MLPA Exhibit B ¶ 35

(Warranty 35) states:

> An appraisal of the related Mortgaged Property was conducted in
> connection with the origination of such Mortgage Loan, and such appraisal
> satisfied the guidelines in Title XI of the Financial Institutions Reform,
> Recovery and Enforcement Act of 1989, as in effect on the date such Mortgage
> Loan was originated.

(Def.'s Br., Dkt. No. 267 Ex. 1, at B-11.)  Defendant claims that it is entitled to summary

judgment on Plaintiff's claimed breach of Warranty 35 because Plaintiff cannot show any

appraisal error caused a significant effect on the appraisal.  Defendant argues that Plaintiff

failed to prove that it violated any regulation in ordering or conducting the appraisals of the

mortgaged property or that any alleged violation was a substantial error that significantly

---

[14] Because summary judgment is denied herein regarding the alleged breach of this warranty, the Court need not determine the propriety of comparing the property value listed in the SREO with the tax assessor's estimation of the property value.  (Def.'s Br., Dkt. No. 267, at 31-32.)

affected an appraisal, which Defendant claims is required under the Uniform Standards of Professional Appraisal Practice Rule 1-1(b).[15]

Plaintiff counters that the significant-effect requirement is only necessary when seeking a violation of Standards Rule 1-1(b), not the two Rules it claims Defendant violated, Rules 1-4(iv) and 1-5(a).[16] Plaintiff asserts that each Standard 1 Rule is independent and that the requirement of significant effects in Rule 1-1(b) is limited to that subpart, not generally applicable to all Rules.  As support for this reading, Plaintiff cites a Kansas case where the court found that noncompliance with Standards Rule 1-4(e) rendered the appraisal non-

---

[15]   These standards are promulgated by the Appraisal Standards Board of the Appraisal Foundation which is authorized under FIRREA, 12 U.S.C. §§ 3331-3351, and 12 C.F.R. § 34.44 (requiring that appraisal reports be written and conform to "generally accepted appraisal standards as evidenced by the Uniform Standards of Professional Appraisal Practice (USPAP) promulgated by the Appraisal Standards Board of the Appraisal Foundation").

[16]   Rule 1-4(c) requires that:

> When an income approach is applicable, an appraiser must:  . . . analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property; . . . analyze such comparable operating expense data as are available to estimate the operating expenses of the property; . . . analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount; and . . . base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence.

Rule 1-5 requires that:

> When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:  . . . analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal; and . . . analyze all sales of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.

(Pl.'s Br., Dkt. No. 282 Ex. 50, at 18-20.)

USPAP compliant.  <u>In re Protests of City of Hutchinson/Dillon Stores</u>, 42 Kan. App. 2d 881,

891 (Ct. App. 2009).  Plaintiff argues that Defendant is misconstruing the Rules to make

compliance with Standards Rule 1-1(b) sufficient to be USPAP compliant; Plaintiff asserts

compliance with Rule 1-1(b) is necessary but not sufficient—all of the Rules must be

complied with in order to satisfy the USPAP Rules and therefore Warranty 35.[17]  (Pl.'s Br.,

Dkt. No. 282, at 35.)

> USPAP Standards Rule 1-1 states that:
>
> In developing a real property appraisal, an appraiser must:
>
> (a)  be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;
>
> (b)  <u>not commit a substantial error of omission or commission that significantly affects an appraisal</u>; and
>
> (c)  not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affects the credibility of those results.

(Pl.'s Br., Dkt. No. 282 Ex. 50, at 16.)  Defendant's argument that Rule 1-1(b)'s requirement

of significant effects and substantial error applies to all Rules is not compelling.  The most

natural reading of Rule 1-1(b)'s requirement of significant effects and substantial error is to

limit that requirement to subpart (b), not as generally applicable to all Rules.  <u>Tyler v.</u>

<u>Douglas</u>, 280 F.3d 116, 122 (2d Cir. 2001) ("'In determining the proper interpretation of a

---

[17]  Under Warranty 35, the applicable Standards are those effective on the respective dates of origination of the mortgage loan.  While the Heritage Ridge loan was originated in 2006, both the Hillandale and Royal Oak loans were originated in 2005.  (Pl.'s Br., Dkt. No. 282 Exhs. 19, 20, 21.)

statute, [t]his court will look first to the plain language of a statute and interpret it by its ordinary, common meaning.'" (quoting Sullivan v. Cnty. of Suffolk, 174 F.3d 282, 285 (2d Cir. 1999) (quotation marks omitted)).  Therefore, this Court agrees with Plaintiff that the Rules are individual and must be met to be FIRREA compliant.

Defendant seeks an additional summary judgment ruling that Warranty 35 did not warrant what LaSalle "did or did not do in connection with the appraisals" and that FIRREA does not have requirements on who may order appraisals.  (Def.'s Br., Dkt. No. 267, at 37.) Rather, Defendant argues, Warranty 35 only warrants that an appraisal was conducted and that the actual appraisal satisfied the FIRREA requirements.  (Id.)  Plaintiff counters that the warranty assures that all appraisals will satisfy the guidelines in FIRREA, which includes appraiser independence.  Appraisal independence can be threatened by the manner in which the appraisal is ordered, and FIRREA regulations require that the appraiser be "engaged directly by the regulated institution or its agent, and have no direct or indirect interest, financial or otherwise, in the property or the transaction."  12 C.F.R. § 34.45(b).  Plaintiff purports that FIRREA guidelines, promulgated by the Office of the Comptroller of the Currency (OCC),[18] establish who within an institution may order an appraisal:

---

[18]  The OCC is a division of the U.S. Treasury regulating nationally chartered, federally insured banks.  See 12 U.S.C. § 93a.  12 C.F.R. § 34.41(b)(1) ("Title XI [FIRREA] provides protection for federal financial and public policy interests in real estate-related transactions by requiring real estate appraisals used in connection with federally related transactions to be performed in writing, in accordance with uniform standards, by appraisers whose competency has been demonstrated and whose professional conduct will be subject to effective supervision.  This subpart implements the requirements of title XI, and applies to all federally related transactions entered into by the OCC or by institutions regulated by the OCC . . . .").

The Guidelines establish minimum standards for an effective program, including standards for selecting individuals who may perform appraisals or evaluations.  Among other considerations, the selection criteria must provide for the independence of the individual performing the appraisal or evaluation. That is, the individual has neither a direct nor indirect[] interest, financial or otherwise, in the property or transaction.  Institutions also need to ensure that the individual selected is competent to perform the assignment. . . .
. . . .
It is also important to ensure that the program is safeguarded from internal influence and interference from an institution's loan production staff. Individuals independent from the loan production area should oversee the selection of appraisers and individuals providing evaluation services.

Office of the Comptroller of the Currency, Independent Appraisal and Evaluation Functions

1-2 (2003), available at http://www.occ.gov/static/news-issuances/memos-advisory-letters

/2003/pub-advisory-letter-2003-9.pdf.  These guidelines were issued to apply to "real estate-

related financial transactions originated or purchased by a regulated institution for its own

portfolio or as assets held for sale."  Id.

Defendant's argument that the statutory language in FIRREA does not regulate who

may order an appraisal is not persuasive.  The standards issued by regulatory agencies and

offices authorized under FIRREA, 12 U.S.C. §§ 3331-3351, and 12 C.F.R. § 34.44, must be

given effect as the congressional authority to promulgate these appraisal standards would

otherwise be meaningless.

Accordingly, Defendant has not met its summary judgment burden that Warranty 35

does not include ordering of appraisal and that Plaintiff's claimed breach of this warranty

requires a USPAP Rule violation in substantial error that caused significant effects.

Defendant's argument that appraisals should not be held to a perfection standard is not

convincing as Plaintiff is alleging that the appraisals failed to meet the required standard of independence.  As there remain controverted issues of material fact, Defendant's Motion for Summary Judgment as to Plaintiff's Warranty 35 claim is denied.

### E.  MLPA Exhibit B ¶ 23

Both Plaintiff and Defendant move this Court for summary judgment rulings on both this breach-of-warranty claim and their opposite readings of "origination" in MLPA Exhibit B ¶ 23 (Warranty 23); Plaintiff additionally seeks a summary judgment ruling that any breach of Defendant's internal guidelines is sufficient to prove it breached customary industry standards.

### 1.  Breach of Customary Industry Standards

Warranty 23 states:

> The origination, servicing and collection practices used by the Seller or, to its knowledge, any prior holder of the related Mortgage Note with respect to such Mortgage Loan have been in all material respects legal and have met customary industry standards.

( Def.'s Br., Dkt. No. 267 Ex.1, at B-9.)  Plaintiff claims Defendant breached this warranty with respect to the Royal Oak and Hillandale Loans by not reviewing the title commitment and confirming that the borrowers' sellers were the vested title owners as reflected in the title commitments, as well as failing to adequately resolve these discrepancies.  Regarding the Royal Oak and Hillandale Loans,[19] LaSalle's underwriter, Ms. Tadda, noticed the

---

[19]  Regarding the Hillandale Loan, Plaintiff also claims that two footnotes in a settlement statement evidenced the simultaneous transactions taking place; Defendant claims these footnotes were not received in time or in a manner to warn of the fraud.  As there remains a material issue of fact as to when and how Defendant received these footnotes, it cannot be support for finding in favor

discrepancies between the title owners and contract sellers and received, from Mr. Flessner, addenda purporting to evidence the sellers' signatory rights for the vested title owners. Plaintiff claims that these addenda resolved nothing and that Defendant breached customary industry standards by failing to properly address these discrepancies. Defendant asserts the addenda were enough to satisfy its requirement of following customary procedures to fulfill its duty under this warranty.

Unlike the Royal Oak and Hillandale Loans discrepancies, the Heritage Ridge Loan discrepancy went unnoticed by the underwriter; the title commitment indicated the record title owner as Heritage Ridge Apartments, LLC, while the contract seller was Heritage Ridge Apartments. This discrepancy was not noted or resolved by the underwriter, and Plaintiff claims that Defendant's failure to recognize the discrepancy breaches Warranty 23 as a matter of law.

Additionally, Plaintiff claims summary judgment is appropriate on its breach of Warranty 23 because Defendant allegedly improperly approved the release of $270,000 by Capmark, the master servicer, based on an alleged deficiency in the property inspection and an affidavit signed by one of Mr. Flessner's "close" associates. Plaintiff asserts these alleged deficiencies and actions, which occurred before the servicing was transferred to Capmark, breached the customary industry standards of servicing loans. (Pl.'s Br., Dkt. No. 282, at

---

of Plaintiff's Motion for Summary Judgment as to this allegedly breached warranty. (Pl.'s Br., Dkt. No. 265, at 45; Def.'s Br., Dkt. No. 280, at 12, 13 & n.6, 42.)

43.)  Defendant disputes both that it approved the release of funds and that this alleged

release approval occurred before the securitization.  (Def.'s Br., Dkt. No. 295, at 25-26.)

Defendant argues Plaintiff's breach of Warranty 23 claims fails as a matter of law

because the term "origination," within the meaning of the warranty, does not include

underwriting or closing.  Therefore, Defendant argues, as underwriting was not warranted

within the meaning of Warranty 23, it could not have breached this warranty even if it failed

to resolve any of the above discrepancies.   Additionally, Defendant claims the risk of

borrower fraud or misrepresentation was not allocated to it under the MLPA, which is the

same argument Defendant asserts as to breach of Warranty 13.   Whether Defendant

warranted underwriting and closing when it warranted origination in Warranty 23 depends

on the definition and meaning of origination.

## 2.  The Meaning of Origination

The parties did not define origination, underwriting, or closing in the MLPA or PSA.

Both claim their reading of origination is correct as a matter of law and warrants summary

judgment.  Generally, origination means the initial creation of the loan by the lending entity,

and underwriting the loan is the more specific process by which the originator of the loan

collects, assesses, and evaluates the financial capability of the borrower to repay the loan and

the value of the collateral property.  Talcott J. Franklin et al., Mortgage and Asset Backed

Securities Litigation Handbook § 1:3-:4 (2010).  Broadly speaking, these terms identify the

processes required to initiate and complete a mortgage loan.

Defendant asserts that reading underwriting and closing into the meaning of origination would improperly imply terms into the warranty that were not a part of the contract.  It further relies on the internal structure of its Multi-Family Group ("MFG") program—the program through which LaSalle originates its loans—which separates the functions of underwriting and originating the loans.  Defendant asserts contract construction compels a finding that origination does not include underwriting and closing.  Defendant claims that reading origination to include underwriting and closing would render other provisions of the MLPA and PSA superfluous.

The provisions Defendant points to as separating the meaning of origination and underwriting govern the meaning of "to the Seller's knowledge" and "to the Seller's actual knowledge."  In MLPA Exhibit B's Defined Terms section, under the title of "Other," "to the Seller's knowledge" is defined as meaning "that no officer, employee or agent of the Seller responsible for the <u>underwriting, origination or sale</u> of the Mortgage Loans . . . believes that a given representation or warranty is not true or inaccurate . . . ."  (Def.'s Br. 267 Ex. 1, at B-14.)   Additionally, within this same provision, "to the Seller's actual knowledge" is defined as meaning that "an officer, employee or agent of the Seller responsible for the <u>underwriting, origination and sale</u> of the Mortgage Loans does not actually know of any facts or circumstances that would cause such person to believe that such representation or warranty was inaccurate."  (<u>Id.</u>)  Defendant purports that the separate use of these terms in the definitional provision exemplifies the parties' understanding that origination was a separate and distinct phase from underwriting.   Plaintiff's reading,

Defendant argues, would render the word "underwriting" in the definitional provisions meaningless as origination would encompass underwriting.

Plaintiff maintains that Defendant is judicially estopped from arguing that origination does not include underwriting, because in previous cases Defendant, then acting in a trustee capacity, prevailed on claims of identically phrased breaches of warranty based on the then-defendant's failure to follow customary standards during underwriting. Specifically, Plaintiff cites LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., No. 0603339/2003 (N.Y. Sup. Ct. Sept. 6, 2006) (unpublished),[20] LaSalle Bank v. Nomura, 424 F.3d at 211 (interchanged use of underwriting and origination), and LaSalle Bank National Ass'n v. Lehman Brothers Holdings, Inc., 237 F. Supp. 2d 618, 630 (D. Md. 2002) (concluding that "the origination and underwriting practices of both [defendants] were not prudent and did not meet industry standards"), as prior cases where LaSalle argued to and prevailed in persuading the courts that origination included underwriting.[21]  Plaintiff also argues that Defendant's interpretation of origination within the context of Warranty 23 is nonsensical, as it would

---

[20]  This case is unpublished and accessible through the New York State Unified Court System's E-Courts Service at http://www.nycourts/gov/ecourts under the advanced search link.

[21]  Plaintiff made the same argument in the Ohio action, but cited different case law, which the Ohio district court found failed to meet the requirements of judicial estoppel.  The court ultimately found that the meaning of "origination" was ambiguous and determined the question should be answered by the jury, which found it to include underwriting and closing.  Wells Fargo, 643 F. Supp. 2d at 1030.  (Pl.'s Br., Dkt. No. 265 Ex. 52.) Although these findings involve the same parties and the same contract, they are not binding on this Court.  See supra note 10 and accompanying text.

warrant the origination of the loan, the sourcing of the loan, and the servicing of the loan, but would skip over the underwriting procedure, the second step in this sequential process.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion to protect the integrity of the judicial process.  New Hampshire v. Maine, 532 U.S. 742, 751 (2001) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

Id. at 749 (alteration in original) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).

Although this doctrine is "'probably not reducible to any general formulation of principle,'" courts use several factors to determine whether its applicability is appropriate.  Id.

> "First, a party's later position must be clearly inconsistent with its earlier position.  Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory.  Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  The requirement that a previous court has accepted the prior inconsistent factual position ensures that judicial estoppel is applied in the narrowest of circumstances.  Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Kaiser v. Bowlen, 455 F.3d 1197, 1204 (10th Cir. 2006) (citations and quotation marks omitted in original) (quoting Johnson v. Lindon City Corp., 405 F.3d 1065, 1069 (10th Cir. 2005)).[22]

In the New York Supreme Court case Plaintiff cites, then-defendant Nomura warranted that the mortgage loans were originated, serviced, and collected in accordance with customary industry standards.  LaSalle, No. 0603339/2003, slip op. at 10.  The New York court held, after considering both parties' expert witnesses' testimony, that origination included underwriting.  Id. at 46-47.  This case establishes that Defendant LaSalle previously adopted and succeeded in persuading a court that origination includes underwriting, which is contrary to its current position.  In the remaining two cases, however, the parties did not dispute the meaning of origination and underwriting; rather, the courts simply used these terms interchangeably.

Defendant counters Plaintiff's judicial estoppel argument by emphasizing that in the prior cited cases, in which it took the position that origination included underwriting, it was advocating in its capacity as trustee for certificateholders, not in its current individual capacity.  Defendant cites two cases as support for not applying judicial estoppel when the party to be estopped was acting in different capacities:  Mitchell v. Chapman, 343 F.3d 811,

---

[22]  Prior to the Supreme Court's decision in New Hampshire v. Maine, 532 U.S. 742 (2001), the Tenth Circuit had not recognized the doctrine of judicial estoppel.  McGuire v. Continental Airlines, Inc., 210 F.3d 1141, 1145 n.7 (10th Cir. 2000); Johnson, 405 F.3d at 1068-69 ("Although this circuit has repeatedly refused to apply this principle [judicial estoppel], the Supreme Court's intervening decision in New Hampshire has altered the legal landscape. Accordingly, we must follow the guidance of the Court's binding precedent." (citations omitted)).

823 (6th Cir. 2003), and <u>An-Tze Cheng v. K&S Diversified Industries, Inc. (In re An-Tze Cheng)</u>, 308 B.R. 448, 455 (B.A.P. 9th Cir. 2004). In <u>Mitchell</u>, the court found that principles of collateral estoppel, or claim preclusion, did not apply when the party to be estopped was acting in two different capacities, individual and official, in the two suits. <u>Mitchell</u>, 343 F.3d at 823. In Defendant's second cited case, <u>In re An-Tze Cheng</u>, the appeals court held that the bankruptcy court's finding that the debtors-in-possession were judicially estopped from asserting a claim that was contrary to a position asserted while in their individual capacity as debtors was in error. <u>In re An-Tze Cheng</u>, 308 B.R. at 454, 457. The appeals court maintained that the different capacities in which the inconsistent positions were asserted should be a factor considered by the trial court when determining whether to apply the doctrine of judicial estoppel. <u>Id.</u> at 454-55. The court reasoned that, as debtors-in-possession, they had a fiduciary duty to maximize the estate for the creditors with legitimate claims and therefore were not barred by judicial estoppel to assert a contrary position while acting in an individual capacity. <u>Id.</u>

Defendant's argument—that the different capacities in which it asserted the opposing definitions of origination should be considered when determining whether judicial estoppel bars Defendant from now arguing origination does not include underwriting—is persuasive. Judicial estoppel should not be applied to bar Defendant from arguing a position it asserts in its individual capacity that is contrary to one it asserted as trustee for certificateholders. The different roles in which Defendant appeared in the present and previous suits required different perspectives; as Trustee, Defendant had a duty to look out for the best interests of

the certificateholders, as did the debtors-in-possession, which may differ from its interests individually.  Considering this factor, application of the equitable doctrine of judicial estoppel would not presently be appropriate.  Therefore, as judicial estoppel does not now prevent Defendant from asserting that origination does not include underwriting, and whether the parties intended origination to include underwriting within the meaning of the contract, is open to two reasonable interpretations,[23] neither party is entitled to summary judgment on this issue.

Plaintiff's final claim for summary judgment, as to the release of funds, also does not warrant a ruling in Plaintiff's favor as there remain disputes of material issues as to when and whether Defendant approved the release of funds before servicing was transferred to Capmark.  (Pl.'s Br., Dkt. No. 282, at 43; Def.'s Br., Dkt. No. 295, at 25-26.)

3.  Internal Guidelines and Violations of Customary Industry Standards

Plaintiff additionally seeks a ruling that a violation by LaSalle of its internal guidelines is sufficient to prove a violation of customary industry standards.  As support for this proposition, Plaintiff claims Defendant is judicially estopped from arguing that violations of internal guidelines are insufficient to prove violations of customary industry standards due to its role in LaSalle, 237 F. Supp. 2d at 630.  Plaintiff also relies on the Ohio court's finding

---

[23] Under New York law, when the meaning of a contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment.  LaSalle Bank, 424 F.3d at 205.  However, the determination of whether a contract's terms are ambiguous is a question of law; a contract is ambiguous if it is reasonably susceptible to more than one interpretation.  Contract ambiguity is evaluated in light of the entire contract.  Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988).

that "evidence that LaSalle did not meet its own internal underwriting guidelines is competent evidence" as a basis for granting summary judgment in its favor. Wells Fargo, 643 F. Supp.2d at 1031.

Neither requires ordering summary judgment for Plaintiff on this point; as previously discussed, the capacity in which Defendant asserted the prior inconsistent argument favors against applying judicial estoppel as a bar against Defendant's present position. Additionally, the Ohio court's ruling that violations of internal guidelines is competent evidence does not support a ruling in Plaintiff's favor that proof of internal guidelines is conclusive evidence that customary industry-wide standards were also violated. Accordingly,  summary judgment in favor of Plaintiff on this matter is denied.

### F.  Prompt Notice under MLPA § 6(g)

Defendant maintains summary judgment is appropriate in its favor on all of Plaintiff's claims because Plaintiff failed to adequately provide notice of the alleged breaches under MLPA § 6(g), which requires that "[e]ach party hereby agrees to promptly notify the other party of any Breach of a representation or warranty."  (Def.'s Br., Dkt. No. 267, at 46.) Defendant argues this notice is a condition precedent to the contractual right Plaintiff asserts—Defendant's buy-back of the loans.  Defendant alleges that the seven- to twelve-month period it took Plaintiff to notify Defendant of the breaches was not prompt, and, therefore, fails to satisfy the condition precedent.  The respective dates of notice for the Royal Oak Loan, the Hillandale Loan, and the Heritage Ridge Loan were July 3, 2008, November 18, 2008, and November 17, 2008. (Pl.'s Br., Dkt. No. 265, at 23-24.) Defendant

cites two cases as support for the proposition that two months is prompt, but eight months

is not.  (Def.'s Br., Dkt. No. 267, at 48); Lehman Bros. Holdings, Inc. v. Laureate Realty

Servs, Inc., No. 1:04-cv-1432-RLY-TAB, 2007 WL 2904591, at *13 (S.D. Ind. Sept. 28,

2007) (unpublished); Morgan Guar. Trust Co. of New York v. Bay View Franchise Mortg.

Acceptance Co., No. 00 CIV. 8613(SAS), 2002 WL 818082, at *10 (S.D.N.Y. April 30,

2002) (unpublished).  Additionally, Defendant claims Plaintiff has never given notice of a

possible breach of Warranty 35 governing the appraisals of the property.  Defendant claims

summary judgment is appropriate as its obligations under the MLPA were never triggered.

Plaintiff counters that it gave adequate notice, given the complexity of the fraud

underlying the claimed breaches and considering the amount of time it took to fully

investigate and outline those frauds in its drafted notices to Defendant.  Plaintiff maintains

that it is unnecessary to allege every basis for each breach to be asserted; rather, it is

sufficient under the MLPA to assert generally that a breach occurred, which Plaintiff

properly asserted.

Defendant's argument that the notice requirement is a condition precedent to its

obligation of repurchase or cure under the MLPA is unconvincing.  Under New York law,

when determining whether a condition is required in order to trigger an obligation,

"'courts . . . interpret doubtful language as embodying a promise or constructive condition

rather than an express condition.'"  Trust for Certificate Holders of Merrill Lynch Mortg.

Pass-Through Certificates Series 1999-C1 v. Love Funding Corp., No. 04 Civ. 9890(SAS),

2005 WL 2582177, at *7 (S.D.N.Y. Oct. 11, 2005) (unpublished) (quoting Oppenheimer &

37

Co., Inc. v. Oppenheim, Appel, Dixon & Co., 660 N.E.2d 415, 418 (N.Y. 1995)).  Here, the

obligation to repurchase or cure the breach arises when the buyer or the seller discovers the

breach; it does not solely arise when the buyer discovers the breach and provides written

notice.  Therefore, Plaintiff's duty to provide notice of the breach to Defendant when

discovered is not a condition precedent to Defendant's obligation to cure or repurchase the

loans.  Id. ("The MLPA requires Love Funding to cure or repurchase 'within sixty (60) days

of *either discovery by* or notice to [Love Funding] of any Breach of a representation or

warranty.'  Thus, [the defendant's] obligation is independent of its receipt of prompt written

notice because, under the terms of the contract, the obligation can also arise upon its own

discovery of a breach.  Consequently, [the plaintiff's] breach of the prompt written notice

provision at most gives rise to a setoff against its assignee, the Trust." (footnotes omitted));

LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc., No. 02 Civ. 7868(HB), 2003 WL

21671812, at *3 (S.D.N.Y. July 16, 2003) (unpublished) (interpreting the same prompt-notice

provision as a promise rather than a condition precedent because the defendant's obligation

to cure or repurchase a mortgage loan was triggered by receiving notice or discovering a

breach of warranty).

The parties failed to define "prompt" within the context of this provision in either the

MLPA or the PSA.  Under New York law, "prompt" used in similar contexts has not meant

immediate, rather it has been interpreted as meaning within a reasonable time.  Lehman

Bros., 2007 WL 2904591 at *13 (unpublished) (citing Instruments for Indus., Inc. v. United

States  (In re Instruments for Indus., Inc.), 496 F.2d 1157, 160 n.5 (2d Cir. 1974)); LaSalle,

237 F. Supp. 2d at 637-38 (finding that notice given within two months of discovery of breaches was prompt); Wells Fargo, 643 F. Supp. 2d at 1032 (denying defendant LaSalle's summary judgment motion when defendant claimed notice was given nine months after the case was filed and fifteen months after plaintiff demanded repurchase of the loan).

Immediate notice after discovering facts that suggest a breach is not required, "[r]ather, upon receipt of such [facts], [Plaintiff] was required only 'to pick up the scent and nose to the source. *If* the quest confirms [a] suspicion, *then* [it] must make [the] decision [to raise the claim] with reasonable dispatch.'" LaSalle Bank Nat'l Ass'n ex rel. Lewnnar Partners, Inc. v. Capco Am. Securitization Corp., No. 02 CV 9916(RLC), 2005 WL 3046292, at *3 (S.D.N.Y. Nov. 14, 2005) (unpublished) (quoting Gannett Co., Inc. v. Register Pub. Co., 428 F. Supp. 818, 828 (D. Conn. 1977)). Additionally, it was reasonable for Plaintiff to take the necessary time needed to fully investigate whether a breach occurred and if that breach had material effects on the required interests. Id. at *4 (finding that a two-month delay was reasonable "[d]ue to the undoubtedly complex legal issues"). While Plaintiff took longer than two months to provide notice, considering the breadth and complexity of the issues involved and the remaining controverted facts as to when exactly Plaintiff discovered the breaches,[24] Defendant's Motion for Summary Judgment that Plaintiff failed to give

---

[24] Specifically, the parties dispute when Plaintiff realized the mortgages were possibly in dispute. LaSalle argues that by December 11, 2007, Plaintiff had concluded that there was a breach of Warranty 10 with respect to the Royal Oak and Heritage Ridge Loans. (Def.'s Br., Dkt. No. 267, at 47 n.21.) Plaintiff alleges this time frame is incorrect as the e-mails on which Defendant relies to reach this date are not conclusive. Plaintiff argues investigation was not complete in December. (Pl.'s Br., Dkt. No. 282, at 45 n.36) (quoting Crown employees as stating in e-mail that it "sounds as if our Oklahoma City loans represent a breach of this rep" and "it certainly looks as though we

prompt notice as to all alleged breaches of warranty is denied.  Defendant's second basis for

summary judgment as to the alleged breach of Warranty 35 is also denied, as the Court

agrees with Plaintiff that the MLPA notice requirement does not require that every alleged

basis for breach also be provided in the initial breach notice.

### G.  Material Breach and Effect

Pursuant to the underlying contracts, an alleged breach must cause a material and

adverse effect on the value of the mortgage loan, the mortgaged property, or the interests of

the certificateholders before Defendant's obligation to either cure or repurchase the

breaching loans is triggered.  Defendant claims that in addition to proving that any alleged

breach caused material and adverse effects, Plaintiff must also prove that the breach was

material.  Plaintiff counters that only the effects of the breach must be material.  Each seeks

summary judgment as to whether the alleged breaches caused a material and adverse effect

in addition to the issue of materiality of the alleged breaches.

### 1.  Material Breach

Defendant asserts that New York case law requires that Plaintiff prove an alleged

breach was material, in addition to the requirement of material effects.   The relevant

provision, PSA § 2.03(b), states:

> If any Certificateholder, the Master Servicer, the Special Servicer, the
> Paying Agent or the Trustee discovers (without implying any duty of such
> person to make, or to attempt to make, such a discovery) or receives notice of
> a Defect in any Mortgage File or a breach of any representation or warranty
> with respect to a Mortgage Loan set forth in, or required to be made with

have a situation").

respect to a Mortgage Loan by the Mortgage Loan Seller pursuant to, the Mortgage Loan Purchase Agreement (a "Breach"), which Defect or Breach, as the case may be, materially and adversely affects the value of such Mortgage Loan, the related Mortgaged Property or the interests of the Trustee or any Certificateholder in the Mortgage Loan or the related Mortgaged Property, such Certificateholder, the Master Servicer, the Special Servicer, the Trustee, the Paying Agent or the Controlling Class Representative, as applicable, shall give prompt written notice of such Defect or Breach, as the case may be, to the Depositor, the Master Servicer, the Special Servicer, the Mortgage Loan Seller, the Trustee, the Paying Agent and the Controlling Class Representative . . . .

(Def.'s Br., Dkt. No. 267 Ex. 3, at 63.)

MLPA § 6(d) and (e) govern the equivalent provision of PSA § 2.03(b), which state:

Pursuant to this Agreement [MLPA] or Section 2.03(b) of the Pooling and Servicing Agreement, the Seller and the Purchaser shall be given notice of any Breach or Defect that materially and adversely affects the value of a Mortgage Loan, the value of the related Mortgaged Property or any interest of any Certificateholder in the Mortgage Loan or the related Mortgaged Property.

Upon notice pursuant to Section 6(d) above, the Seller shall . . . (i) cure such Defect or Breach, as the case may be, in all material respects, or (ii) repurchase the affected Mortgage Loan at the applicable Repurchase Price . . . .

(Id. Ex. 1, at 6-7.)

Defendant insists material breach must be proven due to the doctrine of collateral estoppel and various cited case law. First, Defendant argues that Plaintiff is collaterally estopped from arguing material breach is not required because the Ohio court held in an oral ruling that material breach was a required element. As previously discussed, the Ohio action does not preclude litigation of this issue as collateral estoppel is not applicable; there has yet to be a final ruling and this issue was not necessary to the outcome in the Ohio action.

41

Although the contracts do not expressly require a material breach, Defendant claims its cited New York case law supports this additional requirement.  First, Defendant enumerates the elements of a breach of warranty claim as including material breach and cites to cases that either do not support the material-breach requirement or do include a material-breach requirement but in the context of rescission-of-contract claims.  Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (failing to include material breach as an element); Windjammer Homes, Inc. v. Lieberman, 717 N.Y.S. 2d 362, 363 (App. Div. 2000) (dismissing the plaintiff's claim based on failure to substantially perform the contract); Bd. of Managers of Trump Palace Condo. v. Feld, Kaminetzky, & Cohen, P.C., 889 N.Y.S. 2d 881 (2009) (unpublished) (requiring material breach when claim sounded in breach of contract); Bresloff-Hernandez v. Horn, No. 05 Civ. 0384(JGK), 2007 WL 2789500, at *11 (S.D.N.Y. Sept. 25, 2007) (unpublished) (requiring material breach when claim sounded in breach of contract).  These cases dealt with parties who were arguing that the other had failed to perform the contract.

Defendant's quoted citations are slightly out of context.  While some New York case law does require a showing of material breach when the plaintiff seeks the remedy of contract rescission, this case deals with breach of warranty.  While breach of warranty sounds in contract law, case law outlining the requirements of breach-of-warranty claims does not require that the plaintiff prove material breach.  Rather, a plaintiff must prove four breach-of-warranty elements before being entitled to damages incurred as a result of the breach: "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the

defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant . . . ." Promuto, 44 F. Supp. 2d at 642.

After a careful reading, Defendant's additionally cited case law also fails to establish its argued-for requirement of material breach.  In In re Chateaugay Corp., 155 B.R. 636, 649 (Bankr. S.D.N.Y. 1993), the quoted language on which Defendant relies is itself quoting a case, Metromedia v. Fugazy, 983 F.2d 350, 360 (2d Cir. 1992), abrogated by Yung v. Lee, 432 F.3d 142 (2d Cir. 2005), in which the court used the phrase "material breach" when describing the proposed jury instructions.  Metromedia did not include material breach as an element for a breach-of-warranty claim.[25]  In its next brief, Defendant cited LTV Aerospace

_____

[25]  In fact, when discussing the substantive claim for breach of warranty, the Metromedia court stated the following:

> The substantive framework for Metromedia's breach-of-warranty claim is provided by New York law.  In the leading case, CBS Inc. v. Ziff-Davis Publishing Co., the New York Court of Appeals noted that a breach-of-warranty claim is grounded in contract, and it stated that a buyer need not show that he "believed that the assurances of fact made in the warranty would be fulfilled.  The right to indemnification depends only on establishing that the warranty was breached . . . ."  The court noted that it was not suggesting that there need be no reliance; rather, it stated that "the required reliance is established if, as here, the express warranties are bargained-for terms of the seller."  The court stated that an "express warranty is as much a part of the contract as any other term."

Metromedia, 983 F.2d at 360 (emphasis added) (citations omitted).  The language quoted by subsequent cases as support for the material-breach requirement in breach-of-warranty claims is the proposed jury instructions in the following passage:

> Since as a matter of law, an express warranty is as much a part of the contract as any other term, the inclusion in the Agreement here of the "Representations and Warranties of Express and the Stockholders" established that those representations and warranties were part of the bargain reached between Metromedia and appellants.

& Defense Co. v. Thomson-CSF, S.A. (In re Chateaugay Corp.), 155 B.R. 636, 648 (Bankr.

S.D.N.Y. 1993), and RGC International Investors, LDC v. ARI Network Services, Inc., No.

Civ. 03-0003-SLR, 2004 WL 189784, at *6 (D. Del. Jan. 22, 2004) (unpublished), both of

which also quote the proposed jury instructions outlined in Metromedia for the proposition

that material breach is required in breach-of-warranty claims.  Finally, Defendant's citation

to Morgan Gauranty Trust Co. of New York v. Bay View Franchise Mortgage Acceptance

Co., No. 00 CIV. 8613(SAS), 2002 WL 818082, at *4 (S.D.N.Y. Apr. 30, 2002)

(unpublished), also fails to establish a material-breach element.   In Morgan, the court

concluded that a breach must be material to trigger the repurchase obligation and cited as

support for this proposition Resolution Trust Corp. v. Key Financial Services, Inc., 280 F.3d

12, 17 (1st Cir. 2002), in which the parties' contract specifically required material breach in

---

No rational juror could have found that it was not part of the bargain. Indeed, it is noteworthy that appellants in their proposed jury instructions did not ask to have the jury decide such a question.  Rather, they asked the court to inform the jury that Metromedia could prevail on its breach-of-warranty claim if it proved (1) the existence of an express warranty, (2) material breach of the warranty, (3) damages proximately resulting from the material breach, and (4) justifiable reliance on the warranty. Neither in their initial submission of this request nor in a slightly amended version thereafter did appellants make any mention whatever of a supposed question as to whether the warranties were "bargained for."

The first two questions appellants sought to have the jury consider had been answered by appellants' admissions in the Pretrial Order . . . .  Only the matter of damages was left to be decided, and that question was given to the jury. As the district court noted, appellants advanced no defense to the breach-of-warranty claim . . . .  Accordingly, there was no issue for the jury to decide with respect to appellants' liability on the breach-of-warranty claim, and the district court properly ruled that Metromedia was entitled to recover its damages on that claim as a matter of law.

Id. (emphasis added).

order to trigger the repurchase obligation.  Id. at 14 ("The parties executed a [MLPA] specifying the terms of the transaction.  Section 2.5 of the Agreement delineated thirty-three representations and warranties regarding the notes being transferred, and § 3.1 specified that 'the material breach of any representation or warranty' contained in § 2.5 or other related sections would require Key to repurchase, upon demand, the non-conforming mortgages.") Consequently, these cases fail to support Defendant's assertion that in all breach-of-warranty claims the plaintiff must prove material breach, regardless of the language in the parties' contract.

Despite Defendant's numerous citations, this Court remains unpersuaded that in addition to the clearly-stated requirement that Plaintiff prove the breach materially affected an interest, Plaintiff must also prove material breach.  Therefore, Defendant's Motion for Summary Judgment on this issue is denied, and Plaintiff's Motion for Summary Judgment that it is only required to prove material effects, not material breach, in its breach-of-warranty claim is granted.

## 2.  Adverse and Material Effect

Under the PSA and MLPA, Defendant LaSalle must repurchase loans that breach the warranty and cause a material and adverse effect on the value of the mortgage loan, the related mortgaged property, or the interests of the Trustee or any certificateholder in the mortgage loan or the related mortgaged property.  Defendant claims it is entitled to a summary judgment ruling that no material and adverse effect was caused by any alleged breach as to all of Plaintiff's claimed breaches of warranty.  Plaintiff claims it has met this

requirement because Defendant's breaches of warranties over-inflated the value of the loans and affected the certificateholders' interests in the loans by impacting the valuation given the security.  (Pl.'s Br., Dkt. No. 282, at 48.)  Defendant counters that whether the investors would have made a different decision as to inclusion of the mortgages in the security does not meet the material-and-adverse-affect requirement.   Rather, Defendant argues, the investors inclusion of certain mortgages pertains to whether the information was material to Plaintiff's decision.  (Def.'s Br., Dkt. No. 267, at 50.)  As a final reason, Defendant argues that Plaintiff has not shown, or attempted to show, the required causation—that the alleged breaches actually caused the material and adverse effects.  As both of Plaintiff's summary judgment claims for breaches of warranty were denied and all but one of Defendant's asserted motions for summary judgment as to Plaintiff's breach-of-warranty claims were denied, whether an alleged breach caused a material and adverse effect need not presently be decided as the parties have yet to show that an alleged breach of the remaining warranties occurred.

### H.  B-Piece Investor Due Diligence

Plaintiff moves for summary judgment that due diligence performed by the B-piece investor, Forum, does not impact Defendant's liability for the alleged breaches of warranty. Defendant seeks to use Forum's evaluation of the loans before securitization and its additional powers as the majority owner of the lowest-rated shares as a basis for its waiver defense.  MLPA § 6(c) states:

> Neither the delivery by the Seller of the Mortgage Files, Servicing Files, or any other documents required to be delivered [under the PSA], nor the review thereof or any other due diligence by the Trustee, any Master Servicer, the Special Servicer, a Certificate Owner [Forum] or any other Person shall relieve the Seller of any liability or obligation with respect to any representation or warranty or otherwise under this Agreement or constitute notice to any Person of a Breach or Defect.

(Def.'s Br., Dkt. No. 267 Ex. 1, at 6.)  Defendant argues that by seeking a ruling on this issue at the summary judgment stage, Plaintiff makes an improper motion in limine to exclude at trial evidence of the investors' performed due diligence.  (Def.'s Br., Dkt. No. 280, at 2.) Defendant argues that under New York contract law, a party to a contract waives any claim that is based on knowledge it had at the time the contract was executed and that because the B-piece investor conducted its own due diligence and Plaintiff had access to the mortgage-loan documents, Plaintiff waived any breach-of-warranty claim as to these documents.  (Id. at 25.)

Defendant attempts to side-step § 6(c)'s limitation by emphasizing that it "is not arguing that Section 6(c) relieves it of its obligations under the MLPA."  (Id. at 26 n.13.) Rather than attempt to argue it is relieved of its obligations, which it agrees cannot be limited by any due diligence, Defendant attempts to assert a defense against those obligations.  This argument would render superfluous the specific language governing the investors' due diligence's effect on Defendant's liability; so long as the information was buried somewhere in the underlying mortgage documents, Defendant could assert a waiver defense and not be held to its contracted-for warranty obligations.  The parties unambiguously contracted the effect investor's due diligence would have on Defendant's liability under the warranties.

"When interpreting contracts, [New York courts] have repeatedly applied the 'familiar and eminently sensible proposition of law [ ] that, when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms.'" Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 807 N.E.2d 876, 879 (N.Y. 2004) (quoting W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990)).

As to this issue, Plaintiff does not seek a ruling on the exclusion of any evidence; rather, Plaintiff seeks a ruling on the application of § 6(c) and the effect Forum's due diligence has on Defendant's liability in light of this provision.  Defendant's argument that Plaintiff seeks an improper motion in limine is unfounded; under Federal Rule 56, a party may move for summary judgment on all or part of the claim.  Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or *the part of each claim* or defense—on which summary judgment is sought." (emphasis added)).

Given the breadth of § 6(c)'s language—"nor the review thereof or any other due diligence by . . . a Certificate Owner . . . shall relieve the Seller of any liability or obligation with respect to any representation or warranty"—due diligence on the part of Forum does not impact Defendant's liability under the MLPA.  (Def.'s Br., Dkt. No. 267 Ex. 1, at 6) (emphasis added).  See LaSalle, 237 F. Supp. 2d at 631 (finding that B-piece investor's due diligence did not affect the liability of the loan originator and seller because the trustee "had the right to rely in the event of default on [the defendant's] representations and warranties").  As the contractual language is clear and the meaning is not subject to two reasonable

interpretations, Plaintiff is entitled to summary judgment as to the effects of Forum's due diligence on Defendant's liability under the MLPA.

## V.  CONCLUSION

For the above-stated reasons, this Court now PARTIALLY GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 267) regarding Plaintiff's breach of MLPA §6(a)(viii) claim, and DENIES Defendant's remaining summary judgment arguments. Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 265) is herein PARTIALLY GRANTED as to the effects of the B-Piece investor's due diligence on Defendant's liability under the MLPA, and as to whether Plaintiff need prove material breach in addition to material effect, and DENIES Plaintiff's remaining summary judgment arguments.

IT IS SO ORDERED this 10th day of December, 2010.


ROBIN J. CAUTHRON
United States District Judge