IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) WELLS FARGO BANK, N.A.     )
as Trustee for the Certificateholders of   )
Commercial Mortgage Pass-Through    )
Certificates, Series 2006-MF2 and     )
2006-MF3, acting by and through      )
Crown NorthCorp, Inc., as          )
Special Servicer,              )
                          )
            Plaintiff,   )
                          )
vs.                       )      Case No. CIV-08-1125-C
                          )
LaSALLE BANK NATIONAL      )
ASSOCIATION,             )
                          )
          Defendant.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Wells Fargo Bank ("Wells Fargo") brought suit, in its capacity as Trustee for certificateholders of commercial mortgage-backed securities, against Defendant LaSalle Bank National Association ("LaSalle") seeking damages and specific performance, pursuant to the Mortgage Loan Purchase Agreement ("MLPA"), requiring Defendant LaSalle to repurchase three loans contained within the securities.[1] Before the Court are Defendant's and Plaintiff's Motions in Limine, which will each be discussed in turn.

---

[1] For a summary of the underlying facts in this case, see this Court's Summary Judgment Order (Dkt. No. 323, at 2-5).

## I.  Defendant's Motion in Limine

### A.  MFG Program's Performance and Default Rates

Defendant moves to prohibit evidence regarding the default rates of the MF2 and MF3 securities and evidence of the MFG Program's performance arguing that this evidence is not relevant.  Defendant claims that even if this evidence were relevant, any probative value it may have is substantially outweighed by its unfair prejudicial effect, confusion of the issues, and misleading the jury.  Plaintiff asserts that this circumstantial evidence is necessary to establish systemic flaws in the MFG Program to prove that Defendant breached its warranty regarding the three underlying loans.

The securities at issue involve over 900 loans, three of which are the underlying loans in this action.  While it is true that overall default rates of the securities in comparison to non-LaSalle securities is probative of whether systemic flaws existed in the MFG Program's origination and underwriting, the probative value of this evidence is substantially outweighed by the confusion of the issues, its potential to mislead the jury, and the unfair prejudice caused against Defendant.

To succeed in this suit, Plaintiff must show, in part, that Defendant breached a warranty with respect to three specific loans:  the Hillandale, Heritage Ridge, and Royal Oak loans.  While circumstantial evidence regarding the performance of the security and the default rates of the securitized loans may be probative of whether Defendant satisfied its duties under the warranties regarding these three specific loans, this evidence has great potential to mislead the jury to decide liability based on the alleged poor performance of the

security as a whole.  Instead, liability should be based on whether Defendant breached its warranty as to these three specific loans.  Additionally, admitting evidence of comparison default rates would inevitably lead to extensive evidence comparing the underlying properties, lenders, borrowers, and market fluctuations.  Accordingly, evidence regarding the overall performance of the securities, the overall performance of the MFG Program, and the default rates is inadmissible.

### B. *Bank of America's Evaluation and Termination of the MFG Program*

Defendant seeks exclusion of evidence regarding Bank of America's ("BoA") termination and evaluation of the MFG Program arguing that this evaluation was part of BoA's effort to analyze and value portfolio assets and liabilities and, therefore, is irrelevant to the present action.  Additionally, Defendant argues that this evaluation took place in 2007, after the underlying loans in this action were created and in a different economic climate. While Plaintiff agrees not to introduce evidence regarding BoA's termination of the MFG Program, Plaintiff argues that BoA's evaluation remains highly relevant as to systemic flaws in the MFG Program and whether the MFG Program's guidelines met customary industry standards.  Again, while this circumstantial evidence may be relevant to whether Defendant breached warranties regarding the three underlying loans, its probative value is substantially outweighed by its potential to confuse the issues and unfairly prejudice the jury.  Therefore, this evidence is inadmissible.

## C. Internal Audits of the MFG Program

Defendant seeks exclusion of evidence relating to internal loan reviews performed on MFG loans. Defendant argues that exclusion is necessary because this loan review sampled "left-over" loans that do not reflect or include the loans at issue. Plaintiff argues that this review is generally indicative of the MFG Program's flaws in underwriting. Given that the reviewed loans did not include the loans at issue and represented the "stale loan portfolio," the relevance, if any, of this review on whether Defendant breached warranties regarding the three underlying loans is substantially outweighed by the confusion of the issues and unfair prejudice caused to Defendant. (See Def.'s Reply, Dkt. No. 364 Ex. 5, at 155.) Accordingly, evidence of internal audits of the MFG Program, which do not include the relevant loans, are inadmissible.

## D. OCC Audits

The Office of the Comptroller of the Currency ("OCC") conducted an audit of LaSalle's compliance under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). This audit did not include the MFG Program. Defendant seeks exclusion of evidence regarding this audit arguing that because it did not include the MFG Program it is irrelevant. Even if marginally relevant, Defendant argues, its probative value is substantially exceeded by its potential to confuse and unfairly prejudice the jury. Plaintiff argues that the audit led LaSalle to conduct further internal discussions and reviews of its FIRREA compliance and, therefore, is relevant to whether Defendant breached Warranty 35 regarding the three underlying loans. Because this audit did not include the MFG Program

any small probative value this evidence may have in showing that Defendant breached a warranty regarding the three underlying loans is substantially outweighed by the confusion of the issues and the unfair prejudice caused to Defendant. Accordingly, evidence regarding the OCC audit is inadmissible at trial.

### E. Broker-Ordered Appraisal Program

Defendant seeks exclusion of evidence regarding its program allowing broker-ordered appraisals arguing that such evidence is irrelevant because the three underlying loans did not involve appraisals ordered by brokers. Plaintiff agrees not to admit evidence solely regarding broker-ordered appraisals, but argues that evidence establishing a lack of independence should not be excluded simply because it indicates broker-ordered appraisals. Evidence of appraisal independence is relevant to Plaintiff's claimed breach of Warranty 35, and this evidence's probative value substantially outweighs any risk of confusion or unfair prejudice caused. Accordingly, evidence regarding appraisal independence that indicates the existence of the broker-ordered appraisal procedure is admissible.

### F. Project 30

Defendant moves to exclude all evidence regarding "Project 30," an MFG Program initiative to shorten loan-processing time to thirty days. Defendant argues that this evidence is not relevant given that the program began after the closing date of the MF2 and MF3 securities. Plaintiff acknowledges that the official start date of Project 30 was after the closing periods, but argues that the pressure to speed up closing time affected the origination process which led to systemic flaws in the MFG Program. Finding this evidence relevant and

more probative than prejudicial, evidence of pressure to shorten loan-processing time is admissible. However, because Project 30 was not initiated until after the closing dates of the securities, reference to this specific project is not admissible.

## G. Relationship within MFG Program

Defendant seeks an order excluding all evidence of strained relationships between the origination and underwriting departments within the MFG Program. Defendant claims that this evidence is irrelevant to whether it breached warranties as to the three loans in question, and, therefore, is inadmissible. Plaintiff claims that this evidence shows morale problems and strained relationships within the department, which is probative of systemic flaws within the program that led to substandard underwriting of the loans. Finding this evidence relevant and more probative than prejudicial, evidence of strained relationships within the MFG Program is admissible. However, reference to the "dysfunctional relationship" is not admissible as this label is more prejudicial than it is probative.

## H. Top Ten Brokers

Defendant also seeks exclusion of evidence regarding its "Top Ten Brokers," which included brokers with the highest volume of loans or highest loan amount. Defendant claims this evidence is not relevant and would be highly prejudicial. Plaintiff counters that the broker of the Flessner loans was a Top Ten Broker, and, therefore, this evidence is highly relevant because Top Ten Brokers were treated with more leniency and received underwriting exceptions. Evidence of a pattern of leniency with Top Ten Brokers is relevant to whether Defendant adhered to customary industry standards regarding the three underlying

loans, and its probative value substantially outweighs any unfair prejudice to Defendant. Accordingly, evidence regarding Top Ten Brokers is admissible.

### I. National Field Representative's Property Inspection Report

Defendant seeks exclusion of evidence relating to the quality of the National Field Representative ("NFR") reports and complaints regarding those reports. Defendant argues that these reports and complaints are not relevant to whether it breached any warranty and would mislead the jury. Plaintiff claims that complaints regarding the poor quality of reports and NFR's inspection of the Royal Oak property, which Plaintiff argues was defective and below industry standards, evidence that the underwriting of the three loans at issue was below customary industry standards. While this evidence is relevant to whether Defendant met customary industry standards, the unfair prejudice caused to Defendant and the confusion of the issues substantially outweighs the probative value of the general complaints of NFR inspections. NFR's inspection of the Royal Oak Apartments, however, is more probative of whether Defendant breached a warranty than prejudicial and, therefore, is admissible.

### J. LaSalle's Underwriting and Origination Practices and Guidelines

Defendant also moves for exclusion of evidence pertaining to the underwriting and origination practices and guidelines not in effect during the time of the underwriting of the present loans. Plaintiff agrees that this evidence is not relevant, but argues that the change in MFG appraisal ordering procedures after the relevant time period is highly relevant evidence that Defendant breached Warranty 35 when MFG employees ordered appraisals.

7

Defendant claims any subsequent changes to the appraisal process are irrelevant and otherwise inadmissible as a subsequent remedial measure. Fed. R. Evid. 407. Additionally, Defendant argues, any small probative value this evidence may have is substantially outweighed by the risk of confusion and unfair prejudice caused. Plaintiff claims that the subsequent remedial measures rule is not applicable in contract cases.

The circuit courts are split as to whether the rule against admitting evidence of subsequent remedial measures applies in contract cases, and the Tenth Circuit has yet to explicitly rule on this issue.[2] Rule 407 provides, in pertinent part, that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence [or] culpable conduct" in connection with the event. Fed. R. Evid. 407. The Tenth Circuit has upheld application of this rule in excluding evidence regarding a subsequent suspension of a physical fitness test in a Title VII action and a change in hospital rate procedure in an ERISA action. Stahl v. Bd. of Comm'rs of Unified Gov't of Wyandotte Cnty., 244 F. Supp. 2d 1181, 1187 (D. Kan. 2003), aff'd, 101 F. App'x 316, 321-22 (10th Cir. 2004); Hickman v. GEM Ins. Co., 299 F.3d 1208, 1213-14 & n.9 (10th Cir. 2002).

---

[2] Compare Mowbray v. Waste Mgmt. Holdings, Inc., 45 F. Supp. 2d 132, 141 (D. Mass. 1999) (finding Rule 407 inapplicable in breach of warranty claim), All the Chips, Inc. v. OKI Am., Inc., No. 88 C 8378, 1990 WL 36860, at *4 (N.D. Ill. Mar. 16, 1990) (unpublished), and R.W. Murray, Co. v. Shatterproof Glass Corp., 758 F.2d 266, 274 (8th Cir. 1985), with Reynolds v. Univ. of Pa., 747 F. Supp. 2d 522, ___, No. CIV.A. 06-1237, 2010 WL 4187935, at *11 (E.D. Pa. Oct. 25, 2010) (applying Rule 407 to breach-of-contract cases), and Pastor v. State Farm Mut. Auto. Ins. Co., 487 F.3d 1042, 1045 (7th Cir. 2007).

While the change in appraisal order procedure would have prevented the alleged breach of Warranty 35, Plaintiff is not offering such evidence to establish negligence or culpable conduct, because no such showing is required to succeed in this contract action. Finding evidence of a change in appraisal ordered procedures relevant and more probative than prejudicial, such evidence is admissible. However, evidence regarding origination and underwriting procedures, before and after the loans at issue were originated, is inadmissible.

### K. Bank of America Programs

Defendant seeks exclusion of all evidence regarding BoA's underwriting guidelines, to which Plaintiff generally agrees, with one exception. Plaintiff claims that BoA's Business Banking Program originated loans similar to those originated by the MFG Program and that Business Banking Program's similarity renders the guidelines "a relevant metric for whether LaSalle's underwriting guidelines . . . met customary industry standards." (Pl.'s Rsp., Dkt. No. 354, at 23.) Defendant argues that these two programs sourced loans differently, originated loans for different purposes, and operated during different time periods. These differences, Defendant argues, render any evidence regarding the Business Banking Program irrelevant and inadmissible.

Evidence of BoA's general underwriting guidelines is inadmissible as any probative value this evidence may have is substantially outweighed by its potential to confuse the issues, mislead the jury, and unfairly prejudice Defendant. Evidence regarding the guidelines of BoA's Business Banking Program is also irrelevant and inadmissible. The two programs were substantially different so that any probative value the Business Banking Program's

guidelines may have to prove whether the MFG's guidelines met customary industry standards is substantially outweighed by its potential to confuse the issues and unfairly prejudice Defendant.

## *L.  MFG Employee Performance Reviews*

Defendant also moves to exclude all performance reviews of LaSalle employees arguing that this evidence is irrelevant to the present action and would be prejudicial if admitted because it did not depose the employees reviewed.  Plaintiff counters that evidence admissibility does not depend on the ability to depose.  Plaintiff does not address how this evidence is relevant to the present claim; rather, Plaintiff simply states that the admissibility of this evidence should be determined at trial.  While employee reviews may be tangentially relevant to whether Defendant breached a warranty, the probative value of this evidence is substantially outweighed by its potential to confuse the issues, mislead the jury, and unfairly prejudice Defendant.  Therefore, this evidence is not admissible at trial.

## *M.  Flessner Loans*

Defendant moves to exclude evidence regarding two loans associated with Mr. Flessner which are not the three underlying loans in this action.  The first loan, secured by the Windwood Apartments ("Windwood Loan"), is the subject matter of another lawsuit, which this Court transferred to the District Court for the Southern District of Illinois. Transfer Order, <u>Wells Fargo v. LaSalle</u>, No. 5:10-cv-00863-C (W.D. Okla. Jan. 11, 2011), Dkt. No. 45.  The second loan application, which instigated the suspicion of fraud, involved five separate loans totaling approximately 24 million dollars to purchase the Woodlake

property ("Woodlake Loan"). LaSalle argues that both loans are irrelevant to the present action because the Windwood Loan is the subject matter of another lawsuit and the Woodlake Loan was treated differently due to the higher-than-usual loan amount and additional documentation which raised questions regarding its veracity—Plaintiff disputes what documentation LaSalle had regarding the underlying loans. (See Pl.'s Rsp., Dkt. No. 354 at 29.)

The probative value of evidence regarding the Windwood Loan is not substantially outweighed by the confusion of the issues or unfair prejudice to Defendant, and, therefore, this evidence is admissible. The Woodlake Loan is also more probative of whether Defendant satisfied customary industry standards and outweighs the unfair prejudice or confusion it may cause. Accordingly, evidence regarding these loans is admissible.

### N. Post-Securitization Fraud Suspicions and Report

Defendant seeks exclusion of all evidence regarding its suspicion of fraud, the decision to file a Suspicious Activity Report ("SAR"), and its decision not to inform investors of the fraud, once discovered. Plaintiff argues that this evidence is relevant to whether Defendant adhered to customary industry standards and breached warranties regarding the underlying three loans.

Evidence relating to the filing of a SAR report and LaSalle's decision not to inform investors of the fraud is inadmissible. Any relevance this evidence may have as to whether Defendant failed to meet customary industry standards is substantially outweighed by the potential to confuse the issues and unfairly prejudice Defendant. However, evidence of

Defendant's decision not to inform the investors of the fraud is admissible to the extent needed, if at all, to rebut Defendant's argument that Plaintiff failed to give prompt notice of the alleged breaches as required under the MLPA should Defendant rely on this evidence for its prompt-notice defense.

### O. Evidence of Fraud not Provided to LaSalle During Underwriting and Origination

Defendant also moves for an order excluding documentation of fraud that it did not possess while underwriting and originating the underlying loans. Defendant argues that it has stipulated that two closings occurred on the properties which renders this evidence unnecessary and cumulative. Plaintiff argues that the parties are still disputing what documents Defendant had at the relevant time period and that this determination should be left for the jury. These documents are relevant and any confusion caused to the jury regarding which documents Defendant had in its possession and when it possessed those documents is substantially outweighed by its probative value. Accordingly, this evidence is admissible.

### P. Evidence of Legal Conclusions

Defendant next seeks exclusion of all "testimony from lay witnesses, including deposition testimony, and any document which contains legal conclusions or opinions concerning FIRREA." (Def.'s Mot., Dkt No. 342 at 29.) Plaintiff claims that statements made by Defendant's employees are party-opponent admissions and, therefore, admissible despite being legal conclusions. One example is a memo sent by the MFG Credit Director, Dale Grossman, stating that "[w]e agree that the current appraisal ordering procedures at

MFG do not comply with the independence sections of the appraisal regulations [of FIRREA]." (Pl.'s Rsp., Dkt. No. 270 Ex. 3.)

Under Rule 801(d), a statement is not hearsay if it is offered against a party and is the party's own statement or a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. Fed. R. Evid. 801(d)(2). Party-opponent admissions are admissible, despite being an opinion, so long as that evidence is otherwise admissible. See Graham, 30B Federal Practice and Procedure § 7015, at 204 (interim ed. 2006) ("Admissions in the form of an opinion are competent, even if the opinion is a conclusion of law.").

Here, these documents are proffered to prove that the MFG Program's appraisal process was not sufficiently independent, and are admissible. To the extent this evidence seeks to render a legal conclusion as to the MFG Program's ultimate compliance with FIRREA, a limiting instruction may be provided to the jury. Accordingly, Defendant's motion in limine to exclude all testimony and documentation that contains conclusions or opinions as to FIRREA compliance is denied.

### Q. Tom Watson's Testimony, Reports, and Drafts

Mr. Watson appears as a witness in two capacities: as an expert who created an expert report testifying on behalf of Plaintiff and as a fact witness who was commissioned by LaSalle, prior to litigation, to review its appraisal procedure and compliance with FIRREA. Regarding the former capacity, this Court previously ruled that Mr. Watson's expert testimony and report could not properly include ultimate legal conclusions as to Defendant's

13

FIRREA compliance. Defendant now seeks to exclude all evidence regarding Mr. Watson's work arguing that his report and opinions are more prejudicial than probative. Defendant argues that the "mere fact that Mr. Watson was engaged by LaSalle to give his opinion on FIRREA compliance is not relevant to whether LaSalle actually complied with FIRREA . . . ." (Def.'s Mot., Dkt. No. 342, at 33.)

Plaintiff counters that this evidence is highly relevant to whether Defendant breached Warranty 35 and that excluding all evidence regarding Mr. Watson's investigation casts too large a net which encompasses relevant, admissible evidence. Plaintiff argues that Mr. Watson, as a fact witness, has vital information regarding Defendant's appraisal process which he gained prior to litigation while reviewing LaSalle's procedures.

Mr. Watson's work, in his capacity as a fact witness, is admissible, relevant evidence whose probative value exceeds any prejudice or confusion caused. See Wright & Gold, 29 Federal Practice and Procedure § 6284, at 381 (1997) ("Thus, the admissibility of opinion testimony that may involve legal conclusions ultimately rests upon whether that testimony helps the jury resolve the fact issues in the case. This requires both that the jury can understand what the witness has to say and relate it to the facts.").

Defendant also seeks exclusion of all drafts of Mr. Watson's report claiming that such evidence is inadmissible hearsay. Plaintiff claims these draft reports fit within the business record hearsay exception[3] and are necessary to provide the jury with the appropriate context

---

[3] "To satisfy the business records exception [to the hearsay rule], the proposed document must '(1) have been prepared in the normal course of business; (2) have been made at or near the

14

in which to read Mr. Watson's final report. Plaintiff claims that the final report underwent

fourteen rewrites and that the drafts are more indicative of Mr. Watson's original opinion.

Mr. Watson's drafts fit within the business records hearsay exception: the drafts were

written in the ordinary course of business, near the time of the events, based on Mr. Watson's

personal knowledge under circumstances which were trustworthy. Therefore, Defendant's

motion to exclude Mr. Watson's report drafts is denied.[4] To ensure that the above evidence

is appropriately considered by the jury, a limiting instruction may be warranted.

### R. Hoyt Appraisal Review

Defendant seeks exclusion of a review of the Royal Oak and Heritage Ridge

appraisals performed by J.W. Hoyt & Associates ("Hoyt Review"). Defendant argues that

this review is hearsay, duplicative of Mr. Hoyt's expert report, and more prejudicial than

probative. Plaintiff asserts that the Hoyt Review fits within the business records hearsay

exception. Defendant disagrees, arguing that the review was prepared in anticipation of

litigation and, therefore, is unreliable. Plaintiff counters that the review was prepared over

a year before litigation began and seven months before notice was given to LaSalle. This

---

time of the events recorded; (3) be based on the personal knowledge of the entrant or of a person
who had a business duty to transmit the information to the entrant; and (4) indicate the sources,
methods and circumstances by which the record was made trustworthy.'" United States v.
Yeley-Davis, 632 F.3d 673, 678 (10th Cir. 2011) (pet. for cert. filed, Mar 25, 2011, No. 10-9775)
(quoting United States v. Ary, 518 F.3d 775, 786 (10th Cir. 2008)).

[4] In its Reply Brief, Defendant cites to portions of a November 9, 2010, deposition of
Mr. Watson, in which Mr. Watson asserts that the final report is the clearest version of his final
opinion and the drafts are subject to mistakes. The attached exhibit, however, is a deposition of
Mr. Watson taken on March 4, 2010. While Mr. Watson's testimony regarding his report may
affect the admissibility of this evidence, the Court will not rely on unsubstantiated arguments.

time period, however, is not determinative of the trustworthiness of the review. While it is true that the review was conducted well before the actual filing of the Complaint, in the e-mail requesting the review suspicion is raised regarding the underlying appraisals. (Def.'s Mot., Dkt. No. 342 Ex. 23) ("As we discussed, we are concerned as to how the properties could lose significant value in less than two years time. We would like to engage your expertise and knowledge of the market to perform a desk review of the two original appraisals performed at loan origination to observe any abnormalities or questionable features in how value was derived."). Additionally, the review occurred after the loans were sent to special servicing, which raises concerns about the review's objectivity. Given the context in which the review was requested, this review does not meet the business records exception to hearsay. Accordingly, the Hoyt Review is inadmissible.

### *S. Defense Counsel's Representation of LaSalle Employees*

Finally, Defendant moves to exclude evidence regarding its representation of LaSalle employees as irrelevant and prejudicial. Plaintiff claims that this evidence is relevant to establish bias and motive on the part of testifying employees. While this evidence may be relevant, its potential to confuse the issues or unfairly prejudice Defendant calls for limited admissibility. Therefore, evidence regarding defense counsel's representation of LaSalle employees and LaSalle's solicitation of such representation is admissible to impeach those witnesses. However, evidence regarding or alluding to Plaintiff's Motion to Disqualify Defense Counsel or its argument that defense counsel improperly solicited former LaSalle employees is irrelevant and inadmissible.

## II.  Plaintiff's Motion in Limine

### A.  *Decline in Economy and Mortgage Market*

Defendant asserts that evidence regarding the decline of the economy as well as the decline of the mortgage and real estate markets is pertinent to the issue of material and adverse effect.[5]  Plaintiff counters that the only material and adverse effect it asserts are as of the closing dates of the securities, which renders any evidence regarding post-securitization events irrelevant.  Specifically, Plaintiff argues that as of the closing date of the securities, the value of the certificateholders' interests and the underlying mortgages were materially and adversely affected by Defendant's alleged breaches of warranties.  Evidence regarding the post-securitization market meltdown is relevant only if Plaintiff asserts material and adverse effects occurred after the securitization closing date.  So long as Plaintiff asserts material and adverse effects as of the closing date, evidence regarding the post-securitization market conditions is inadmissible.

### B.  *B-Piece Investor's Due Diligence and Sophistication*

Plaintiff seeks to exclude any evidence of the B-Piece investor's due diligence, citing the parties' contract, which prohibits this diligence from influencing LaSalle's liability under the warranties.  Defendant claims that evidence of due diligence performed and the investors' sophistication is relevant to identifying then-prevailing industry standards.  While this

---

[5]  Defendant cites this Court's Order regarding the parties' Daubert motions as controlling the admissibility of all post-securitization events.  The quoted portion, however, addresses only the admissibility of one expert whose experience, testimony relevancy, and reliability were challenged at the Daubert motion stage.

evidence may be relevant to the customary industry standards or as general background information, any probative value of this evidence is substantially exceeded by the risk of confusing the issues presented to the jury and unfairly prejudicing Plaintiff. Accordingly, no evidence of Forum's conducted due diligence is admissible—regardless of which party seeks to introduce it—because "due diligence on the part of the Forum does not impact Defendant's liability under the MLPA." (Order, Dkt. No. 323, at 48.) Plaintiff's motion in limine to exclude all evidence of Forum's sophistication, however, is denied.

### C. Certificateholders' Investment Risk and Rate of Return

Plaintiff moves for an order precluding Defendant from admitting evidence regarding the risk associated with investing in the security and the rate of return earned by the certificateholders arguing that such evidence is irrelevant to whether Defendant breached warranties. Defendant counters that this information is "inseparable from Plaintiff's claims" and bears on whether any alleged breach materially and adversely affected the certificateholders' interests. The probative value of this evidence is not substantially outweighed by the confusion of the issues and unfair prejudice caused to Plaintiff. Accordingly, evidence regarding the risk of investment or the rate of return is admissible. Again, to prevent confusion, a limiting instruction may be required regarding the relevance of this evidence.

### D. LaSalle's Knowledge Prior to Closing Date

Defendant argues that its lack of knowledge is relevant to Plaintiff's claim that it should have discovered the fraud and its defense that it adhered to customary industry

standards. Plaintiff agrees the information that was actually provided to Defendant is admissible; but, Plaintiff argues, Defendant should be "prohibit[ed] . . . from arguing or introducing evidence that it was not aware of [warranty] breaches or facts or events giving rise to [warranty] breaches." (Pl.'s Reply, Dkt. No. 363, at 8.)

Because Defendant's lack of knowledge regarding warranty breaches is no defense to Defendant's potential liability and the probative value, if any, of this evidence is exceeded by its potential to confuse the jury, this evidence is inadmissible. This conclusion does not render all evidence regarding Defendant's lack of knowledge inadmissible: evidence regarding Defendant's level of knowledge of the underlying facts has more probative value, but due to the potential of confusion, should be narrowly admitted to rebut evidence introduced by Plaintiff regarding Defendant's knowledge, or lack thereof, of the underlying facts.

## E. Appraisal Errors and Significant Effects

While it is true that Plaintiff is not required to show that an appraisal error had a "significant effect" under the asserted appraisal standards, this does not preclude the admissibility of all evidence regarding the effect of appraisals; Plaintiff must still establish that any alleged warranty breach caused a material and adverse effect. While the unfortunate use of similar language in two different contexts does raise concerns of jury confusion, excluding all evidence regarding the effects of appraisal error at the in limine stage is inappropriate considering that the evidence's probative value may outweigh the risk of confusion. Therefore, evidence of the appraisal error effects is only admissible as evidence

regarding whether any alleged breach caused material and adverse effects, not as evidence of whether a breach occurred. This separation may require a limiting instruction to the jury to avoid confusion.

## F. *Expert Opinions in Addition to or Different from Report*

Plaintiff seeks an in limine ruling that prohibiting Defendant from "introducing any expert opinions in addition to or different from those expressed in the expert reports and deposition testimony of Defendant's purported experts." (Pl.'s Mot., Dkt. No. 341, at 10.) Both parties agree that experts should not be permitted to testify to opinions that are not disclosed in their reports. The main point of contention is whether this limitation also applies to opinions stated during deposition but not in the expert's report. Defendant argues that testimony given at depositions that is beyond the scope of the expert's report does not change the rule limiting that expert's testimony to opinions expressed in the expert's report.

Under Rule 26(a)(2)(B), an expert witness must disclose a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). However, expert witnesses are not limited to reading their reports from the stand; rather, the expert is expected to "supplement, elaborate upon, explain and subject himself to cross-examination upon his report." Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006). Under Rule 37(c)(1), if a party fails to disclose information required by Rule 26(a), its expert may not testify as to that information unless the failure is harmless. Fed. R. Civ. P. 37(c)(1); Jacobsen v. Deseret Book Co., 287 F.3d 936, 951-52 (10th Cir. 2002). Accordingly, an expert's testimony that expands upon

an opinion that expert expressed in a previous report or deposition is admissible. And, as the parties agree, expert opinions in addition to or different from those expressed in the expert reports are not admissible.

### G. Mitigation of Damages

Plaintiff moves to exclude Defendant from offering evidence regarding Plaintiff's mitigation of damages. Defendant argues that Plaintiff's failure to mitigate damages affects whether any alleged breach materially and adversely affected its interests, and, therefore, should be admissible. On December 27, 2010, this action was bifurcated into two phases: liability and damages. While Defendant argues that Plaintiff's failure to mitigate its damages is probative of whether it is liable to Plaintiff for alleged breaches of warranty, the probative value this evidence has, if any, is exceeded by confusion of the issues and unfair prejudice caused. Consequently, evidence regarding Plaintiff's mitigation of damages is inadmissible at the liability stage of the litigation.

### H. Crown NorthCorp, Inc.'s Rating

Plaintiff moves to exclude any evidence Defendant may offer regarding the ratings of Crown NorthCorp, Inc. ("Crown"). Defendant argues that Crown's rating is relevant to the action because Crown is the party asserting Defendant breached its warranties, but this is not persuasive. Crown's 2009 special servicer rating is not probative of whether LaSalle breached the MLPA warranties. Accordingly, evidence of Crown's special servicer rating is inadmissible.

*I. Release of Holdback Funds*

Plaintiff no longer asserts that LaSalle's improper authorization of the holdback funds serves as an additional basis in support of Plaintiff's claim that LaSalle breached Warranty 23 in connection with underwriting the Royal Oak loan. Therefore, Plaintiff argues, Defendant should be prohibited from referencing the master servicer's release of the holdback funds. Defendant claims that the release of holdback funds is still relevant to its defense that it met customary industry standards. Because Plaintiff no longer asserts this evidence as a basis for a breach of Warranty 23 and the probative value, if any, of this evidence in relation to the customary industry standards is substantially outweighed by the confusion of issues and considerations of time, evidence regarding the master servicer's release of the holdback funds is inadmissible.

*J. Fraud Against Other Banks*

Finally, Plaintiff requests that Defendant be prohibited from admitting evidence that Kevin Flessner allegedly defrauded Imperial Capital Bank ("ICB"). Specifically, Plaintiff argues that any evidence regarding this alleged fraud or the case resulting therefrom is irrelevant to whether Defendant breached its warranty in the present case. Defendant argues that evidence of Mr. Flessner's fraud on another bank is relevant to whether Defendant followed customary standards in its dealings with Mr. Flessner. However, evidence that another bank was defrauded by Mr. Flessner does not reflect whether either bank followed customary industry standards. Accordingly, this evidence's probative value, if any, as to whether Defendant violated customary industry standards is substantially outweighed by

confusion of the issues and unfair prejudice. Accordingly, evidence that Mr. Flessner's allegedly defrauded ICB is inadmissible.

## III. CONCLUSION

For the above-stated reasons, Defendant's Motion in Limine (Dkt. No. 342) is herein PARTIALLY GRANTED and PARTIALLY DENIED. Plaintiff's Motion in Limine (Dkt. No. 341) is herein PARTIALLY GRANTED and PARTIALLY DENIED. On any topic for which the Court has suggested limiting instruction or for which counsel desires a limiting instruction, counsel should file a proposed limiting instruction with its proposed jury instructions, which are due April 20, 2011.

Defendant also filed a Motion for Leave to File a Second Amended Witness and Exhibit List to add Alex Kinsey as a fact witness in response to this Court's Order excluding portions of Defendant's expert, Timothy Dwyer, from testifying as to a chart reflecting delinquency rates of various LaSalle securitizations. As Defendant's Motion in Limine to exclude evidence regarding default rates is herein granted, Defendant's Motion for Leave to File a Second Amended Witness List (Dkt. No. 351) is moot.

IT IS SO ORDERED this 1st day of April, 2011.

ROBIN J. CAUTHRON
United States District Judge