IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) WELLS FARGO BANK, N.A. )
as Trustee for the Certificateholders of )
Commercial Mortgage Pass-Through )
Certificates, Series 2006-MF2 and )
2006-MF3, acting by and through )
Crown NorthCorp, Inc., as )
Special Servicer, )
                       Plaintiff, )
  )
vs. )    Case No. CIV-08-1125-C
  )
LaSALLE BANK NATIONAL )
ASSOCIATION, )
  )
                       Defendant. )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Wells Fargo Bank ("Wells Fargo") brought suit, in its capacity as Trustee for certificateholders of commercial mortgage-backed securities, against Defendant LaSalle Bank National Association ("LaSalle")[1] seeking damages and specific performance, pursuant to the Mortgage Loan Purchase Agreement ("MLPA"), requiring Defendant LaSalle to repurchase three loans contained within the securities. On December 27, 2010, the Court bifurcated the liability and damages phases of the present action, and on June 14, 2011, a jury unanimously found that LaSalle breached Warranties 13, 23, and 35 regarding the Royal Oak

---

[1] In May 2008, LaSalle was acquired by Bank of America and subsequently assumed its name. For purposes of this Order, the Court will continue to refer to Defendant as LaSalle. (Pl.'s Am. Compl., Dkt. No. 41, at 5; Def.'s Br., Dkt. No. 267, at 7.)

and Hillandale Loans. In the Bifurcation Order, the parties agreed that "[i]f the jury returns a verdict finding that LaSalle is liable on one or more of Wells Fargo's claims as described in paragraph 1(i) and 1(ii) above, the Court will determine whether the appropriate remedy is specific performance or money damages[.]" (Order, Dkt. No. 330, at 3.) Plaintiff now moves this Court to set a schedule and procedure for determining its remedy. The parties disagree about several issues regarding the damages phase of the present action. Specifically, the parties disagree as to the following issues: (1) whether Plaintiff is entitled to specific performance; (2) whether the purchase price clause in the parties' contract is a liquidated damages provision; (3) whether Plaintiff's alleged failure to mitigate can be used to offset a damages award; and (4) how Plaintiff must prove its attorneys' fees and other expenses for which it seeks reimbursement. Each issue will now be discussed in turn.

## II. DISCUSSION

### A. *Specific Performance*

Under the MPLA and PSA, LaSalle's obligation to repurchase a loan is triggered by a breach of warranty. (Pl.'s Br., Dkt. No. 534 Ex. 2 § 6(e); Def.'s Br., Dkt. No. 280 Ex. 1 § 2.03(b).) Under the PSA, the price at which LaSalle must repurchase loans is set at the purchase price under § 1.01. (Pl.'s Br., Dkt. No. 534 Ex. 2 § 6(e) ("The 'Repurchase Price' with respect to any Mortgage Loan or REO Loan to be repurchased pursuant to this Agreement and Section 2.03 of the Pooling and Servicing Agreement, shall have the meaning given to the term 'Purchase Price' in the Pooling and Servicing Agreement."); Def.'s Br., Dkt. No. 280 Ex. 1 § 1.01.) Specifically, the purchase price is the sum of the principal

2

balance of the loan, the interest due at the mortgage rate, the outstanding advances and advance interest, reasonable legal fees and expenses incurred, and a liquidation fee. (Def.'s Br., Dkt. No. 280 Ex. 1 § 1.01.) Plaintiff urges that the contract and relevant commercial mortgage-backed securities ("CMBS") case law require that the purchase price be utilized to determine its damages. As support for its argument, Plaintiff cites LaSalle Bank National Ass'n v. Capco American Securities Corp., No. 02 CV 9916(RLC), 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005); LaSalle Bank National Ass'n v. Lehman Brothers Holdings, Inc., 237 F. Supp. 2d 618 (D. Md. 2002); Resolution Trust Corp. v. Key Financial Services, Inc., 280 F.3d 12 (1st Cir. 2002); and Morgan Guaranty Trust Co. v. Bay View Franchise Mortgage Acceptance Co., No. 00 CIV. 8613 (SAS), 2002 WL 818082 (S.D.N.Y. April 30, 2002).

Plaintiff argues that the purchase price clause was negotiated by the parties because the amount of damages caused by a breach of warranty would be difficult to calculate; therefore, the parties negotiated the amount of damages that Plaintiff would suffer should such a breach occur, regardless of whether Defendant could actually repurchase the loan. Plaintiff argues that requiring actual repurchase of the mortgages would cause depreciation of the property during the years of litigation potentially necessary to determine whether Defendant's repurchase obligation had been triggered. Additionally, Plaintiff cites Resolution Trust, 280 F.3d 12, as support for its argument that even though the mortgages at hand have actually been foreclosed upon and the properties sold—therefore, rendering actual repurchase impossible—the purchase price is the correct measure of damages.

3

In Resolution Trust, despite finding that several loans had gone "off-line" because the mortgages were removed from the portfolio due to foreclosure or sale, the court found that the purchase price remained the appropriate measure of damages because that contract provision "shift[ed] the risk to the selling party in the event that a dispute ar[ose]." Resolution Trust, 280 F.3d at 18. Also citing Resolution Trust, 280 F.3d 12, the court in LaSalle v. Lehman Brothers, 237 F. Supp. 2d 618, found that the purchase price was the appropriate remedy for Lehman Brothers' breaches of warranty under the parties' PSA, despite the possibility that Lehman Brothers would not be able to actually buy back the mortgages due to a pending bankruptcy action. Lehman Bros., 237 F. Supp. 2d at 638 (stating that even "if it is not possible for defendant Lehman to repurchase the . . . mortgage loan because of the pending bankruptcy proceedings, plaintiff may still recover traditional contract damages in this case," and determining those damages by utilizing the purchase-price calculation).

Defendant argues that Plaintiff actually seeks specific performance, to which it is not entitled for two reasons: (1) actual repurchase of loans at issue is impossible due to foreclosure of loans; and (2) Plaintiff has failed to make the required showing that monetary damages are an inadequate remedy. The Court agrees with Defendant that Plaintiff would not be entitled to the "extraordinary remedy" of specific performance—because Plaintiff seeks only monetary damages and the repurchase of the mortgage loans at issue is impossible—but, as demonstrated in the above-referenced case law, this finding does not foreclose that the appropriate method of calculating damages is purchase price. See Barton

Group, Inc. v. NCR Corp., ___ F. Supp. 2d ___, 2011 WL 2555855, at *27 (S.D.N.Y. June 27, 2011) ("Moreover, specific performance is an 'extraordinary' remedy for which the requesting party 'must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.'" (quoting Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 262 (2d Cir. 2002))).

The CMBS case law and the parties' contract make clear that a "repurchase provision is designed to shift the risk to the selling party in the event that a dispute arises," and that such a provision is the appropriate method of making Plaintiff whole once a breach of warranty is established. Resolution Trust, 280 F.3d at 18 ("[T]he district court was free to make Home Owners whole, and it did so in terms of the obligation imposed by the contract."); Lehman Bros., 237 F. Supp. 2d at 638-39 (calculating damages by use of the parties' purchase price clause and citing Resolution Trust); Capco, 2005 WL 3046292, at *5 ("The parties agreed to a method of calculating the repurchase price. . . . By awarding damages in the amount that Capco agreed to pay in the event of breach, the court will make LaSalle whole."). Accordingly, the Court finds that the purchase price is the correct method of determining Plaintiff's damages caused by Defendant's breaches of warranties.

*B. Liquidated Damages Clause*

Plaintiff asks this Court to construe the purchase price provision in the parties' contract as a liquidated damages clause citing LaSalle National Bank Ass'n v. Capco American Securities Corp., No. 02 CV 9916(RLC), 2005 WL 3046292 (S.D.N.Y. 2005), as support. Besides this case, Plaintiff points to no other CMBS case law where such a

5

provision has been so interpreted, nor does Plaintiff establish that it has satisfied the prerequisites to enforcement of such a clause. And while it is true that the court in Capco found that "the parties provided for liquidated damages," it did not address the requirements of a liquidated damages clause nor the specifications of when such a clause could be appropriately used. See Capco, 2005 WL 3046292, at *5-6 (twice using the term "liquidated damages" to describe the repurchase clause, stating "[t]his clause provides for liquidated damages in the event that a breach cannot be cured. . . . Allowing a party to 'cure' by tendering a cash payment when the parties provided for liquidated damages in this event is contrary to the parties' manifested intentions." (emphases added)).

Defendant counters that this provision cannot be a liquidated damages clause because it fails two prerequisites of enforcement of such clauses: (1) that the clause be for "an amount certain;" and (2) that the amount of damages be difficult to determine. See Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V., 893 F. Supp. 215, 218 (S.D.N.Y. 1995) ("In order for a court to enforce a liquidated damages clause under New York law, the clause must specify a liquidated amount which is reasonable in light of the anticipated probable harm, and actual damages must be difficult to ascertain as of the time the parties entered into the contract."); Truck Rent-A-Ctr. v. Puritan Farms 2nd, 41 N.Y.2d 420, 424-25 (1977) ("If, however, the amount fixed [by a liquidated damages clause] is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced.").

6

Disagreeing with Plaintiff that a liquidated damages clause may be a formula, rather than a set numeral amount, Defendant argues that the formula in the purchase price contains too many elements that are not susceptible to ready, undisputed calculation. Therefore, Defendant asserts, such a formula cannot be for an amount certain which precludes this provision from being a liquidated damages clause. Specifically, Defendant points to the following language as requiring a determination of reasonableness:

> all <u>reasonable</u> out-of-pocket expenses <u>reasonably incurred</u> or to be incurred by the Master Servicer, the Special Servicer, the Depositor and the Trustee in respect of the Breach of Defect giving rise to the repurchase obligation, including any expenses arising out of the enforcement of the repurchase obligation, including, without limitation, all legal fees and expenses any expenses of the Trust Fund relating to such Mortgage Loan[.]

(Def.'s Br., Dkt. No. 280, Ex. 1, at 39 (emphases added).) Reasonableness requires a determination by a court, which, Defendant argues, precludes this clause from satisfying the requirement of being for an amount certain. The Court agrees. Under this provision, Plaintiff is only entitled to recover costs that are reasonable, which is not susciptible to an amount certain. Nor is it likely that the parties would agree on the reasonableness of such costs, which necessitates an outside determination. See Chateau D'If Corp. v. City of New York, 641 N.Y.S.2d 252, 254 (App. Div. 1996) ("The function of a liquidated damages clause is to resolve the damage question without further dispute by setting an arbitrary approximation of damages . . . ."). Additionally, Defendant points to the PSA's language that Crown must adhere to a servicing standard as support for its assertion that the purchase price is not a liquidated damages clause and that Plaintiff must mitigate its damage.

7

Because Plaintiff relies on only one case as support for its conclusion, it does not explain why damages would be difficult to calculate or why the contract's language requiring an assessment of reasonableness is for a certain amount, the Court is not persuaded by Plaintiff's argument that the purchase price is a liquidated damages clause. While the Court agrees that such clauses need not be labeled "liquidated damages" in order to be valid, it does not find that the purchase price satisfies the requirements of a liquidated damages clause. (Pl.'s Br., Dkt. No. 534, at 8 (citing Lease Corp. of Am. v. Resnick, 732 N.Y.S.2d 266, 268-69 (App. Div. 1991).) Accordingly, the purchase price provision is not a liquidated damages clause; this conclusion, however, does not disrupt the prior finding that such clause is the appropriate method of calculating damages so as to make Plaintiff whole.

## B. Failure to Mitigate

Plaintiff also moves for an order that any award of damages to which it is entitled should not be offset by its failure to mitigate damages. As support, Plaintiff again cites LaSalle Bank National Ass'n v. Capco American Securities Corp., No. 02 CV 9916(RLC), 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005); LaSalle Bank National Ass'n v. Lehman Brothers Holdings, Inc., 237 F. Supp. 2d 618 (D. Md. Dec. 9, 2002); and Resolution Trust Corp. v. Key Financial Services, 280 F.3d 12 (1st Cir. 2002).[2] Plaintiff interprets all of these

---

[2] Plaintiff cites additional case law which prohibits offsetting a damages award for a failure to mitigate, but these cases concluded as much due to a finding that the parties had a valid liquidated damages clause. Because the purchase price is not considered a liquidated damages clause, this case law is not discussed.

cases as establishing that mitigation of damages is not considered in a CMBS action when determining damages under a repurchase clause.

Defendant disagrees that <u>Resolution Trust</u> did not consider a mitigation defense and cites the First Circuit's affirmation of the district court's ruling, which included in its analysis of damages "the present value of the repurchase price on the day of the breach, plus other reasonable costs and expenses incurred after the breach, <u>minus sums received or that reasonably could have been garnered to mitigate the damages</u>." <u>F.D.I.C. v. Key Fin. Servs., Inc.</u>, No. 89-2366-DPW, 1999 WL 34866812, at *12 (D. Mass. Dec. 23, 1999) (emphasis added), <u>aff'd</u>, <u>Resolution Trust</u>, 280 F.3d 12. Additionally, as support for its argument that a mitigation defense can be used to offset the amount of the award to which Plaintiff is entitled, Defendant cites <u>Trust for the Certificate Holders of the Merrill Lynch Mortgage Pass-Through Certificates Series 1999-C1 v. Love Funding Corp.</u>, No. 04 Civ. 9890(SAS), 2005 WL 2582177 (S.D.N.Y. Oct. 11, 2005); and <u>LaSalle Bank Nat'l Assoc. v. Nomura Asset Cap. Corp.</u>, 846 N.Y.S. 2d 95, 99 (App. Div. 2007).

After reviewing the above-cited cases, the discord as to the extent CMBS case law allows a full mitigation of damages defense is evident. In <u>Nomura</u>, 846 N.Y.S. 2d 95, the New York court stated, when evaluating damages, that

> [t]he critical issue is whether or to what extent plaintiff unreasonably delayed in notifying defendants of the claimed breaches, [providing the required prompt notice,] <u>or in taking other necessary steps to protect the value of the investment property</u>, thereby unreasonably failing to mitigate damages, so as to preclude any award of damages.

9

Nomura, 846 N.Y.S. 2d at 99 (emphasis added). Additionally, the Nomura court admitted that both parties in that action "recognize[d] . . . a mitigation of damages approach" was the "operative analysis." Id. Also cited as support for allowing mitigation of damages in CMBS repurchase cases is Love Funding Corp., which stated that "to the extent that through its own delay [the plaintiff] aggravated its injuries stemming from Love Funding's breach, which presents an issue of fact, the Trust's recovery should be reduced accordingly." Love Funding Corp., 2005 WL 2582177, at *7 n.84. And, finally, F.D.I.C. v. Key Financial Services, Inc., is cited as support for applying a general mitigation defense. Key Fin. Servs., Inc., 1999 WL 34866812, at *12. While it is true that the Massachusetts district court did consider Plaintiff's mitigation when calculating damages, on appeal the First Circuit stated, after finding that a repurchase provision shifts the risk to the selling party, that

> [f]or this reason, it is irrelevant that the loans may have suffered a loss in value because of changing market conditions rather than because of the deficiencies in the loans' title policies. Section 3.1 obligated Key to repurchase these faulty mortgages upon demand, meaning that from the moment a proper repurchase demand was made, Key—not Home Owners—should have borne the risk of any market fluctuations.

Resolution Trust, 280 F.3d at 18 & n.14. Additionally, while the First Circuit affirmed the district court's determination of damages, it made no mention of mitigation nor did it explicitly include mitigation in its summary of the district court's calculation of damages. Id. at 18 n.15 ("In fact, the district court's calculation of damages merely represents what Key would have paid Home Owners had it repurchased the loans when it was supposed to have done so . . . , plus statutory interest from that date, plus the costs of mitigation and

10

servicing, less the payments received on account of the loans from the date of demand to the date of judgment."). Neither court in Capco, 2005 WL 3046292, nor Lehman Brothers, 237 F. Supp. 2d 618, applied general mitigation as a defense to the defendant's obligation when determining damages, pursuant to a purchase price, for breach of warranty.

Recognizing this inconsistency among the case law, the Court finds Capco, Lehman Brothers, and Resolution Trust more persuasive in finding that a general mitigation defense is not applicable to present circumstances, because "[a] repurchase provision is designed to shift the risk to the selling party in the event that a dispute arises." Resolution Trust, 280 F.3d at 18. However, the parties did not allocate to Defendant the risk of any failure by the special servicer in servicing the loans post-default. (See Def.'s Br., Dkt. No. 280 Ex. 1 § 3.01; see also Pl.'s Br., Dkt. No. 534 Ex. 4, at 3 (coming to the same conclusion).) Therefore, to the extent such failure impacted the resulting purchase price Defendant owes Plaintiff, only that amount should be offset as a failure to mitigate.

## C. Attorneys' Fees

Plaintiff asks this Court to find that an affidavit, as required under Local Rule 54.2, stating the amount of time spent on the case, the hourly fee actually claimed and usually charged, and other pertinent factors relating to attorneys' fees is sufficient to rule on its sought-for recovery of attorneys' fees. As support for this minimal showing requirement, Plaintiff cites two cases from this Court: Southwestern Bell Yellow Pages, Inc. v. R.I.C. Leasing, Inc., No. CIV-08-1105-C, 2009 WL 2497255 (W.D. Okla. Aug. 17, 2009), and Gautier v. Jones, No. CIV-08-445-C, 2009 WL 2929338 (W.D. Okla. Sept. 9, 2009).

Only the latter somewhat addresses whether an affidavit alone is sufficient to establish reasonable attorneys' fees. Gautier, 2009 WL 2929338, at *2 & n.* ("The Court finds that the documentation submitted by Plaintiff in his reply represents a reasonable lodestar amount for this case. One of Defendant's main objections in its response was that Plaintiff failed to properly document the hours spent in litigating this case because only a general affidavit was attached to the Motion for Attorney's Fees. However, Plaintiff attached a very detailed breakdown of how many hours were spent on each activity, thereby rendering moot Defendant's arguments on this issue."). However, as Defendant points out, the plaintiff in Gautier, who sought attorneys' fees, filed as an exhibit an invoice of the work performed. Reply Brief, Gautier, No. CIV-08-445-C (W.D. Okla. June 25, 2009), Dkt. No. 43 Ex. 1.

The former case on which Plaintiff relies simply states that the "Plaintiff is ordered to submit an affidavit in support of its claim for damages and attorney's fees within ten days." Southwestern Bell, 2009 WL 2497255, at *4. Additionally, Plaintiff relies on the procedure followed by the court in Capco, 2005 WL 3046292, as support for its argument that affidavits summarizing the amount of fees are adequate.

Defendant vehemently opposes Plaintiff's conclusion regarding the sufficiency of submitting affidavits and, instead, asserts that a party seeking attorneys' fees must introduce detailed, contemporaneous time records to establish the reasonableness of the sought-for amount. Defendant argues that New York law[3] requires the movant "'to produce

---

[3] Defendant argues that New York law governs the present query because of the parties' choice of law provision. Because this Court has subject matter jurisdiction over the present action based on diversity jurisdiction, the Erie doctrine applies and matters categorized as

12

contemporaneous records of the nature of the work performed, the need for the work, and the time expended on the work.'" (Def.'s Br., Dkt. No. 535, at 18 (quoting Van Dorn Retail Mgmt., Inc. v. Jim's Oxford Shop, Inc., 874 F. Supp. 476, 488-89 (D.N.H. 1994).)

Despite Plaintiff's assertion otherwise, Local Rule 54.2 does not obscure the requirement that Plaintiff provide contemporaneous, detailed records of the work performed in order to receive an award of its attorneys' fees. While it may be true that the two cases Plaintiff cites from this Court allowed affidavits as a sufficient showing, this is not the required practice. See Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., LP, No. CIV-04-191-D, 2009 WL 2778912, at *1 & n.2 (W.D. Okla. Aug. 28, 2009). Nor is such a minimal showing sufficient here, where the attorneys' fees are likely to be the bulk of the

---

substantive are governed by the forum state law and those categorized as procedural are governed by federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "'[I]n diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes.'" Qulds v. Prin. Mut. Life Ins. Co., 6 F.3d 1431, 1445 (10th Cir.1993) (alteration in original) (quoting King Res. Co. v. Phoenix Res. Co., 651 F.2d 1349, 1353 (10th Cir. 1981)). Defendant argues that Rule 54 of the Federal Rules of Civil Procedure and Local Rule 54.2 are inapplicable because attorneys' fees are a substantive element of Plaintiff's claim for damages under the purchase price in the PSA. Plaintiff argues that while the issue of whether a party is entitled to attorneys' fees is a substantive question, the calculation of such fees and rules governing that calculation are procedural. However, because either applicable law requires contemporaneous, detailed records, any distinction of applicability between the two for the present inquiry is limited; therefore, the Court can avoid entering this thicket for present purposes. Compare Case v. Unified Sch. Dist. No. 233, Johnson Cnty., 157 F.3d 1243, 1250 (10th Cir. 1998) (requiring "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks"), and Usrey v. Wilson, 2003 OK CIV APP 25, ¶ 6 & n.3, 66 P.3d 1000, 1002 & n.3 (stating that counsel "would be well-advised to keep contemporaneous time records for use in presenting an application for attorney fees"), with Regan v. Conway, 768 F. Supp. 2d 412, 418-19 (E.D.N.Y. 2011) (declining to award attorneys' fees that were not contemporaneously recorded), and Daimlerchrysler Corp. v. Karman, 782 N.Y.S.2d 343, 347 (Sup. Ct. 2004).

damages awarded and both parties have shown a propensity for extraneous and loquacious filings. While Plaintiff needs to provide contemporaneous and detailed records, these records may be redacted to exclude information within the attorney-client privilege,[4] so long as such redaction does not exclude information needed to assess Plaintiff's sought-for reasonable attorneys' fees.

Additionally, contrary to Plaintiff's assertion, Defendant has not waived a right to trial on this matter before the Court; the parties did waive a right to a jury trial in the Bifurcation Order, but not a bench trial. (Order, Dkt. No. 330, at 3 ("By this stipulation, the parties hereby waive any right they may have to a jury trial on the issues set forth in Paragraph 3 above.") (emphasis added).)

### III. CONCLUSION

For the above-stated reasons, the Court now PARTIALLY GRANTS Plaintiff's Motion to Set Schedule and Procedure for Determining Plaintiff's Remedy (Dkt. No. 534) insofar as the parties' purchase price is the correct method of calculating Plaintiff's damages. Additionally, Plaintiff's Motion to Strike Defendant's Submission in Response to Plaintiff's

---

[4] Plaintiff's argument that this Court has previously held such documents were protected by the attorney-client privilege misconstrues this Court's finding. In the Order that Plaintiff cites, the Court simply questioned whether the billing invoices Defendant sought during the discovery phase were relevant to determine liability. (Order, Dkt. No. 211, at 6-7.) In refusing to compel disclosure of such documents, the Court found that Plaintiff's assertion of attorney-client privilege was sufficient. This finding, however, does not impose a universal protection over all of Plaintiff's billing invoices, especially given the current context in which they arise.

Motion to Set Schedule and Procedure for Determining Plaintiff's Remedy (Dkt. No. 538.) is DENIED.[5]

IT IS SO ORDERED this 23rd day of August, 2011.

_____
ROBIN J. CAUTHRON
United States District Judge

---

[5] Defendant filed, to use its description, a "submission" to Plaintiff's Reply Brief in this matter. (Def.'s Br., Dkt. No. 537, at 1 n.2.) While the Court considered Defendant's arguments and additional support therein, it should be noted that this is not the correct procedure, as Plaintiff attests in its Motion to Strike Defendant's Submission in Response to Plaintiff's Motion to Set Schedule and Procedure for Determining Plaintiff's Remedy. (Pl.'s Br., Dkt. No. 538.) Under Local Rule 7.1, parties must move the Court for leave to file supplemental briefs, and this Rule applies with equal force to Defendant. LCvR7.1. Despite this procedural failing, the Court will consider Defendant's so-called "submission" to save the parties' and the Court's time, energy, and resources. However, Defendant should take note that if it should wish to file a surreply in the future, it should move for such leave under Local Rule 7.1.